Major Michael M. BURNS

v.

The UNITED STATES.

No. 599–81C.

United States Claims Court.

Dec. 5, 1985.

MacKenzie Canter, III, Washington, D.C., atty. of record for plaintiff.

Charles R. Gross, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, Lt. Col. Marshall M. Kaplan and Major Thomas R. Folk, Office of the Judge Advocate General, U.S. Army, of counsel, for defendant.

## OPINION

WOOD, Judge:

In this action, before the court on defendant's motion for summary judgment and plaintiff's opposition thereto, plaintiff, an Army Reserve officer released from active duty in 1978 following two nonselections for promotion to the temporary grade of lieutenant colonel, Army of the United States, sues to recover the basic pay and allowances of a major from and after the date of his relief from active duty (or, alternatively, "damages * * * of $500,000 * * * for the loss of future retirement benefits * * *."[1]

The amended complaint herein contains six counts. In general terms, plaintiff alleges a denial of "due process and equal protection of the laws," as well as a number of violations of statute, in connection

with his relief from active duty; he also alleges that the Army Board for Correction of Military Records ("ABCMR"), to which he applied without success in 1981, acted arbitrarily, capriciously and unlawfully in failing to grant him relief. Each of these "counts" will be described below.[2]

Defendant contends that, on the material facts concerning which no genuine dispute exists, it is entitled to judgment as a matter of law. More specifically, defendant asserts that all but one of the claims here made have effectively been waived by plaintiff's failure to raise them in his application to the ABCMR, and that the single claim raised administratively is not a valid one. Defendant adds, however, that in any event neither the single claim presented to the ABCMR nor any other contention raised herein, in plaintiff's amended complaint or brief, has any merit, and that the complaint should therefore be dismissed. The government's ultimate position that plaintiff's claims lack any substance is, for reasons hereinafter appearing, sound, and sustained.

## I

The material facts stated in this section I are drawn from plaintiff's complaint and the exhibits and affidavits properly before the court, and are for present purposes undisputed.[3]

Plaintiff was appointed a second lieutenant, United States Army Reserve (USAR), August 19, 1961. He accepted an appointment as a second lieutenant, Army of the United States (AUS), January 6, 1962, and entered on active duty as such that date. He was promoted to the temporary grade of major, AUS, October 24, 1968, and to the permanent grade of major, USAR, August 2, 1974. Plaintiff's active military service, which included 13 months in Korea (1963–64), 13 months in Hawaii (1967–68), 12

---

1. Other relief, by way of an order directed to the Secretary of the Army pursuant to 28 U.S.C. § 1491(a)(2) (1982), is also sought.

2. In opposing defendant's motion for summary judgment, plaintiff advances some new claims, while failing to mention others raised in his complaint. *Cf. Nossen v. United States*, 416 F.2d

1362, 1371, 189 Ct. Cl. 1 (1969), *cert. denied*, 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970).

3. Additional matters of a factual nature will be described in connection with the specific arguments to which they relate.

months in Viet Nam (1968–69), and 49 months in The Netherlands (1970–74), was performed primarily as an intelligence officer.

In 1977, plaintiff was considered for promotion to the temporary grade of lieutenant colonel, AUS, by an Army selection board (the 1977 Board) consisting of 16 members, three of whom were Reserve officers. The 1977 Board considered approximately 2,600 officers, some 800 or so of whom were Reserves, for promotion to the temporary grade of lieutenant colonel. Plaintiff was not recommended for temporary promotion by the 1977 Board.

In 1978, plaintiff was considered for promotion to the temporary grade of lieutenant colonel, AUS, by an Army selection board (the 1978 Board) consisting of 15 members, three of whom were Reserve officers. The 1978 Board considered approximately 2,300 officers, some 700 or so of whom were Reserves, for promotion to the temporary grade of lieutenant colonel. Plaintiff was not recommended for temporary promotion by the 1978 Board.[4]

In consequence of plaintiff's nonselections for promotion to the temporary grade of lieutenant colonel, he was involuntarily released from active duty, pursuant to the provisions of 10 U.S.C. § 681 (1976)[5] and Army Regulation (AR) 635–100, as amended, on December 7, 1978. At that time he had completed 16 years, 11 months and two days of active military service.[6]

During the period here material, the military performance of officers on active duty in the Army was periodically evaluated in an Officer Efficiency Report (OER) or, in the event the officer concerned was attending school during the period covered by the evaluation, in an Academic Report. The record before the court includes some 28 OERs and Academic Reports, covering some 71 pages, rendered on plaintiff during the period 1962–78. Each of these reports is, on its face, complete and in detail. The record contains no indication whatever that plaintiff ever sought administratively any change in, or complained to the Department of the Army about the contents of, any OER or Academic Report rendered on him.[7]

In the early part of 1980, in response to Congressional action urging modification of its existing "up-or-out" temporary promotion policy, the Department of the Army adopted and implemented a new selective continuation program. Pursuant to the new program, effective for fiscal year

---

4. Plaintiff alleges that the ratios of Reserve to Regular members, and Reserve to Regular candidates, for each Board were as follows:

1977 Board

| Reserve/Regular Members | Reserve/Regular Candidates |
|---|---|
| 9.5% / 90.5% | 31.8% / 68.2% |

1978 Board

| | |
|---|---|
| 19% / 81% | 29.2% / 70.8% |

While the record substantiates defendant's view that the 1977 Board's Reserve member percentage was somewhat greater than that alleged, no genuine issue of material fact exists in this respect in any event. See Bockoven v. Marsh, 727 F.2d 1558 (Fed.Cir.), cert. denied, — U.S. —, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984).

5. Section 681 provided in pertinent effect that the Secretary of the Army might at any time release a reserve officer under his jurisdiction from active duty. AR 635–100 provided that Army reserve officers serving on active duty who failed a second time to be recommended for promotion to the temporary grade of lieutenant colonel and who had less than 18 years' active military service would be released from active duty. See also Chapter 5, AR 624–100, as amended, to the same effect.

6. Plaintiff received severance pay pursuant to statute. See 10 U.S.C. § 687 (1976).

7. In a 1985 affidavit attached to his brief in opposition to defendant's motion, plaintiff does aver that certain of his OERs did not, and could not, contain certain "highly classified, sensitive information * * *" as to the "specific duties" and "details" of certain of his assignments. The record also contains a 1977 affidavit, by a retired officer who had served with plaintiff (then a first lieutenant) in 1963 and 1964; the affiant stated that he had "[m]uch later learned" that two of plaintiff's superiors at the time "did what they could to hurt Lt. Burns' career." Even in 1977, the affiant admittedly had "no knowledge of what * * *" those superiors had added to the OER he prepared on plaintiff some 13 or more years earlier. He speculated, however, that "it was probably undeserved," and that the action of the 1977 Board "may be predicated on this one efficiency report."

1980, a Reserve officer on active duty who had twice failed of selection for promotion to the temporary grade of lieutenant colonel or major might nonetheless be considered for retention on active duty by a Selective Continuation Board, and, if selected, be offered the opportunity to remain on active duty in his current grade. The first Major, AUS, Selective Continuation Board appointed under the new program was convened in March 1980, some 15 months after plaintiff's release from active duty.

In February 1981 plaintiff, represented by counsel, applied to the ABCMR for correction of his military record to show his reinstatement on active duty as of December 7, 1978, the date of his release from active duty. The sole basis asserted for believing his record to be erroneous or unjust was that his involuntary release from active duty following his failures of selection for temporary promotion "constitute[d] impermissible discrimination against me as a Reserve officer since a Regular officer under the same set of circumstances would have been retained until he/she was passed over twice for. promotion to the permanent grade of lieutenant colonel." [8] The application was denied, without a hearing, on or about June 29, 1981.

## II

Plaintiff's amended complaint includes six "counts." They are, in essence, that:

1. as his 1981 application to the ABCMR asserted, his release from active duty in 1978 in consequence of his 1977 and 1978 failures of selection for temporary promotion to the grade of lieutenant colonel, when a Regular Army officer who had twice failed of selection for temporary promotion to that grade would have been retained on active duty, denied him "due process and equal protection of the laws";

2. the ABCMR's "decision * * * not to recommend plaintiff for consideration for

further retention on active duty by a Selective Retention Board was * * * arbitrary, .capricious, and contrary to law";

3. the ABCMR's "failure * * * to void the passovers of plaintiff operated as a breach of contract," and its "failure * * * to consider plaintiff's position as an intelligence officer and the necessity of lack of narrative evaluation on his OER's * * * was arbitrary, capricious, and contrary to law";

4. his release from active duty improperly "deprived and divested [him] of his liberty and property interest in continued Army service," and the ABCMR's denial of his 1981 application without a hearing denied him due process;

5. the 1977 and 1978 Boards were illegally constituted, in violation of 10 U.S.C. § 3362 (1976); and

6. the 1977 and 1978 Boards were illegally constituted, in violation of 10 U.S.C. § 266(a) (1976).

In its motion for summary judgment, defendant asserts that plaintiff has waived five of the six "counts" enumerated above, and that the single one not waived—the claim that his involuntary release resulted in a denial of "due process and equal protection of the laws"—is not a valid one. Defendant alternatively argues, however, that even should the remaining claims be scrutinized on the merits, defendant's motion should still be granted. As noted above, the result for which defendant contends is proper.

### a. The "Impermissible Discrimination" Claim

Throughout the period here relevant, an officer of the Army Reserve serving on active duty who was twice considered but not recommended for temporary promotion in the Army of the United States to the grade of lieutenant colonel was (absent circumstances not here present) subject to mandatory relief from active duty. A Reg-

---

**8.** Plaintiff's application made no reference whatever to his OERs or the manner in which they had been prepared throughout his military service. Nor did plaintiff raise any other con-

tention of error or injustice, legal or otherwise. Plaintiff did, however, indicate that he desired to appear before the Board.

ular Army officer who was twice considered but not recommended for temporary promotion in the Army of the United States to the grade of lieutenant colonel was, however, not thereby subject to involuntary separation from active duty, but (unless earlier retired or discharged) would have been permitted to continue to serve on active duty unless and until he twice failed of selection for promotion to his next higher *permanent* grade. The differing treatment admittedly accorded Army Reserve and Regular officers underlay plaintiff's 1981 ABCMR application, and is one of several reasons advanced by plaintiff as a ground for recovery here.

■ That differing treatment had its roots in regulations and policy. Since the regulations and policy were plainly not predicated on inherently suspect criteria, and did not involve any fundamental right in the constitutional sense, they are not to be "invalidated on equal protection grounds unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the [government's] actions were irrational." *Kester v. Horner*, 778 F.2d 1565, 1570 (Fed.Cir.1985); *see also Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312–13, 96 S.Ct. 2562, 2566–67, 49 L.Ed.2d 520 (1976); *Puglisi v. United States*, 564 F.2d 403, 409, 215 Ct.Cl. 86 (Ct.Cl.1977). And, particular and "healthy deference [is to be given] to legislative and executive judgments in the area of military affairs." *Rostker v. Goldberg*, 453 U.S. 57, 66–67, 101 S.Ct. 2646, 2652–53 (1981). The courts lack competence to interfere with a military service's effectuation of personnel changes through retention or separation of officers from active duty in accordance with regulations and policy, and may not validly do so. *Id.* 453 U.S. at 70, 101 S.Ct. at 2654; *see also Schlesinger v. Ballard*, 419 U.S. 498, 508–10, 95 S.Ct. 572, 577–79, 42 L.Ed.2d 610 (1975); *Orloff v. Willoughby*, 345 U.S. 83,

93–94, 73 S.Ct. 534, 539–40, 97 L.Ed. 842 (1953).

■ There are, and ever have been, many and significant differences between the Army Reserve and the Regular Army, and between commissioned officers of the two components. Indeed, inherent in the very definition of the "purpose of each reserve component," and the "[B]asic policy for order into Federal service," 10 U.S.C. §§ 262–63 (1982), are clear and sharp Congressional recognitions of such differences in, among other things, mission, status, and employment.

In 1978, the Secretary of the Army had broad discretion "at any time [to] release a Reserve under his jurisdiction from active duty," and could do so without affecting his "active status" as a Reserve officer. 10 U.S.C. §§ 267, 681 (1982);[9] *see Turner v. United States*, 231 Ct.Cl. 882, 884 (1982); *Abruzzo v. United States*, 513 F.2d 608, 611, 206 Ct.Cl. 731 (1975); *Jamerson v. United States*, 401 F.2d 808, 810–11, 185 Ct.Cl. 471 (1968). In contrast, a Regular Army officer released from active duty was, if not eligible for retirement, separated by discharge, with a consequent loss of *any* military status. *See, e.g.,* 10 U.S.C. §§ 630, 632 (1982).

Retaining a commissioned officer of the regular military establishment, notwithstanding two failures of selection for temporary promotion to the grade of lieutenant colonel, in lieu of discharging him from any military status, while releasing from active duty a Reserve officer similarly situated (whose very "purpose" was to be available to serve on active duty when "more * * * persons are needed than are in the regular components," 10 U.S.C. § 262 (1982)) but retaining him in "active status" (and permitting him to continue to serve and to qualify for retirement, albeit on a different basis than the Regular Army officer) was clearly a "distinction * * * related to a legitimate governmental interest" which the policy under challenge sought to advance.

---

**9.** Such a Reserve officer could continue to serve in "active status," and to qualify for Reserve retirement under 10 U.S.C. §§ 1331 *et seq.* (1982).

Put another way, there was a rational basis for that policy, and it "will not be set aside because it is 'imperfect' or lacking 'mathematical nicety' or because 'in practice it results in some inequality.'" *Puglisi*, 564 F.2d at 411; *see also Kester*, 778 F.2d at 1570; *Schlesinger*, 419 U.S. at 508–10, 95 S.Ct. at 577–79. Instead, "the court must uphold the rule even though it may seem unwise or that a more just system could clearly be devised." *Puglisi*, 564 F.2d at 411.[10] Scrutiny of the policy attacked as a deprivation of equal protection demonstrates that there was a reasonable basis for it. That finding requires that the plaintiff's constitutional challenge be denied.

b. The "consideration for further retention on active duty by a Selective Retention Board" Issue

■ In Count II of plaintiff's amended complaint, and on brief, plaintiff alleges that the ABCMR acted arbitrarily and capriciously "in not recommending plaintiff [under a change in policy adopted in or around February 1980, and effective for Fiscal Year 1980] for retention on active duty following his release in 1978." The allegation is sophistical.

Plaintiff's 1981 application did not even mention, much less ask that the ABCMR consider him under, the new policy, adopted and first implemented long after his separation. *Cf. Borgford v. United States*, 221 Ct.Cl. 920, 923 (1979); *Doyle v. United States*, 599 F.2d 984, 1000–01, 220 Ct.Cl. 285, opinion modified, 609 F.2d 990, 220 Ct. Cl. 326 (1979), *cert. denied*, 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980); *Abruzzo*, 513 F.2d at 612. It would scarce-

ly be appropriate to deem arbitrary or capricious a failure to grant a request never made.

In any event, however, plaintiff can derive no comfort from a policy whose terms were well within the Secretary's discretion, which was adopted following his release, which was not made retroactively effective, and which was explicitly applicable only to persons situated quite differently from plaintiff. No valid ground for holding the Army's 1980 change in policy to be a source of monetary right to plaintiff has been suggested, or appears.[11]

c. Plaintiff's OERs

■ Although he did not so contend in applying to the ABCMR—or in any other administrative forum—and his amended complaint does not so allege, plaintiff's opposition to defendant's motion for summary judgment asserts that his OERs were "fatally defective, on their face," for failure to reflect "detailed information relating to the actual [intelligence] operations in which plaintiff was involved" in Korea, Viet Nam, and Europe.[12] Intelligence officers, he asserts, are, when considered for promotion along with officers of other branches, victims of "inherent bias" and "injustice."

As defendant rightly urges, plaintiff failed to raise in any administrative forum any question whatever respecting the content (or lack of content) of the OERs or Academic Reports rendered on plaintiff while he was serving on active duty in the Army, and therefore may not now be heard to do so in this court. *Borgford*, 221 Ct. Cl. at 923; *Doyle*, 599 F.2d at 1000–01; *Abruzzo*, 513 F.2d at 612; *cf. Hary v. Unit-*

---

10. Plaintiff was, of course, entitled to the readjustment pay accorded non-regulars involuntarily released from active duty. 10 U.S.C. § 687 (1976). Moreover, he would (if qualified) have been accorded the benefit of 10 U.S.C. § 1163(d) (1976). And, in any event, his right to earn retirement credits, and to qualify for retirement benefits, was not terminated. *See note 9, supra.*

11. On the record before the court, plaintiff's alternative suggestion, on brief, that a factual issue regarding this claim exists is patently fallacious.

12. Count III of plaintiff's amended complaint does allege that the ABCMR arbitrarily and capriciously failed "to consider plaintiff's position as an intelligence officer and the necessity of lack of narrative evaluation on his OER's * *," but that is a quite different argument (and one not repeated on brief). Count III also alludes to a "breach of contract," a charge also not repeated on brief, but in any event devoid of substance.

*ed States,* 618 F.2d 704, 707–08, 223 Ct.Cl. 10 (1980).[13] Plaintiff having applied to the ABCMR, but having elected not to afford the Army, acting through the ABCMR or otherwise, "an opportunity to make adjustments and correct errors on the administrative level," *Doyle,* 599 F.2d at 1001, plaintiff's charge that his OERs were unjust because they lacked detail may not be raised in this court, and for the first time, on brief. *Id.*

d. Plaintiff's alleged "liberty and property interest in continued Army service," and the denial of his application to the ABCMR

Plaintiff asserts that his release from active duty without a prior hearing, and the subsequent denial of his application to the ABCMR without a hearing, "violated his rights to procedural due process." Neither facet of the argument has any merit.

■ With respect to plaintiff's release from active duty without a prior hearing, an Army Reserve commissioned officer serving on active duty has neither a liberty nor a property interest, in the constitutional sense, in either a military promotion or in continued active service. *Blevins v. Orr,* 721 F.2d 1419, 1421–22 (D.C.Cir.1983); *Woodard v. Marsh,* 658 F.2d 989, 998 (5th Cir.1981), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982); *Pauls v. Secretary of the Air Force,* 457 F.2d 294, 297 (1st Cir.1972); *and see Board of Regents v. Roth,* 408 U.S. 564, 572–78, 92 S.Ct. 2701, 2706–10, 33 L.Ed.2d 548 (1972).

■ As to denial of plaintiff's application for correction of military record without a hearing, the law in this court is that a Correction Board "hearing is not required by statute, but is within [the ABCMR's] discretion." *Flute v. United States,* 535 F.2d 624, 628, 210 Ct. Cl. 34 (1976), and cases there cited. Plaintiff ignores defendant's reliance on *Flute,* but offers nothing whatever to justify or permit a holding that

denial of plaintiff's application to the ABCMR without a hearing was in any way arbitrary, capricious or unlawful.

In short, on the undisputed facts of record, it is clear that neither plaintiff's release from active duty without a prior hearing, nor the ABCMR's denial of his application without a hearing, amounted to a deprivation of "procedural due process."

e. Plaintiff's 1977 and 1978 Boards

Counts V and VI of plaintiff's amended complaint allege that the 1977 and 1978 Boards which considered but did not select him for promotion to the temporary grade of lieutenant colonel were "void and illegal" because constituted in violation of 10 U.S.C. § 3362 (1976) and 10 U.S.C. § 266 (1976), respectively, and that, in consequence, his release from active duty in 1978 was also "void and illegal."

■ In its motion for summary judgment, defendant contends, and soundly, that section 3362 applied to permanent promotions of commissioned officers of the Army Reserve, not to selection boards considering officers (Regular and Reserve) for temporary promotion in the Army of the United States. Moreover, plaintiff's opposition makes no mention whatever of either Count V or section 3362. It would, accordingly, be appropriate to deem this claim abandoned in any event. *Nossen v. United States,* 416 F.2d 1362, 1371, 189 Ct. Cl. 1 (1969), *cert. denied,* 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970).

■ Plaintiff fares no better with respect to section 266. *Bockoven v. Marsh,* 727 F.2d 1558 (Fed.Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984); *Palmer v. United States,* 6 Cl. Ct. 541 (1984). Moreover, plaintiff's opposition mentions neither Count VI nor section 266. Here too, it would be appropriate to deem this claim abandoned in any event. *Nossen,* 416 F.2d at 1371.

---

**13.** The essence of plaintiff's "defective" OER claim is that they "worked an injustice against plaintiff," not that any OER was in any way legally erroneous, inaccurate, contrary to regulation, subjective, or misleading. *Cf. Turner,* 231 Ct.Cl. at 884–85; *Engels v. United States,* 578 F.2d 173, 230 Ct.Cl. 465 (1982); *Hary,* 618 F.2d at 706, n. 3; *Tanaka v. United States,* 538 F.2d 348, 210 Ct.Cl. 712, 713 (1976), *cert. denied,* 430 U.S. 955, 97 S.Ct. 1599, 51 L.Ed.2d 804 (1977).

## III

In sum, defendant has satisfactorily established that on the facts concerning which there is no genuine dispute and the law, it is entitled to judgment as a matter of law, and its motion for summary judgment is therefore granted. The complaint will be dismissed pursuant to RUSCC 58.

No costs.