COLEMAN AMERICAN MOVING SERVICES, INC., an Alabama corporation; Admiral Van & Storage Company, Inc., an Alabama corporation; Consolidated Van & Storage Company, Inc., an Alabama corporation; Acme Moving & Storage Company, Inc., an Alabama corporation; Alabama Moving & Storage Company, Inc., an Alabama corporation; Thompson Moving & Storage Company, Inc., an Alabama corporation; Shelly Loftin, d/b/a ABC Moving & Storage Company, a sole proprietorship; Hickman Moving & Storage, an Alabama corporation; and Patrick B. Coleman, Plaintiffs,

v.

Casper WEINBERGER, Secretary of the United States Department of Defense; John O. Marsh, Jr., Secretary of the United States Department of the Army; Major General Edward Honor, Commander, United States Army Military Traffic Management Command, Room 702, 5611 Columbia Pike Falls Church, Virginia 22041–5050; and the United States of America, Defendants.

Civ. A. No. 86–T–1016–S.

United States District Court,
M.D. Alabama, S.D.

Feb. 15, 1989.

James R. Wyrsch, Koenigsdorf, Kusnetzky & Wyrsch, Bernard C. Craig, Jr., Levy & Craig, Kansas City, Mo., and David B. Byrne, Jr., Robison & Belser, Montgomery, Ala., for plaintiffs.

John C. Bell, U.S. Atty., and Kenneth E. Vines, Asst. U.S. Atty., Montgomery, Ala., for defendants.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

The plaintiffs in this lawsuit challenge, first, their past, temporary suspensions from eligibility to bid on moving and storage contracts with agencies of the federal government, and, second, the refusal of the federal government to award them "make-up tonnage" following the termination of their suspensions. The plaintiffs are Patrick B. Coleman, Coleman American Moving Services, Inc., Admiral Van & Storage Company, Inc., Consolidated Van & Storage Company, Inc., Acme Moving & Storage Company, Inc., Alabama Moving and Storage Company, Inc., Thompson Moving & Storage Company, Inc., ABC Moving & Storage Company and Hickman Moving & Storage. The defendants are the United States of America and various government officers who imposed and enforced the suspensions in question and who determined that the plaintiffs should not be awarded make-up tonnage.

This cause is now before the court on a motion to dismiss or in the alternative motion for summary judgment, filed by defendants. For reasons that follow, the court concludes that the defendants' motion for summary judgment should be granted.

## I. BACKGROUND

### A. The Suspensions

This case is the fifth in a line of cases brought by the plaintiffs challenging the federal government's actions leading up to and following their suspensions. In the first four cases, consolidated under the style *Coleman American Moving Services, Inc. v. Marsh*, civil action nos. 86–T–327–S, 86–T–328–S, 86–T–329–S, and 86–T–365–N (M.D.Ala. April 25, 1986), this court refused to enjoin the government's suspension of the plaintiffs. In its 1986 order, this court related the facts leading up to the suspensions to be, for the most part, as follows.

i.

Each of the plaintiffs derives substantial revenue from contracts awarded by the Army's transportation office at Fort Rucker, a military installation in Alabama. These contracts provide for long-term storage, interstate transportation, and overseas shipment of household goods for military personnel. When soldiers at Fort Rucker receive orders transferring them either to another military installation in the United States or to an installation abroad, they report to the fort's transportation office. If the transfers are temporary, the transportation office contracts for short-term storage of the soldiers' household goods. If the transfers are expected to span a number of months or years, the transportation office contracts either for long-term storage of the soldiers' household goods in the Fort Rucker vicinity or for shipment of the soldiers' effects to their new posts.

To provide the services described above, the plaintiff companies engage in two different types of activities. First, the companies act as prime contractors, entering into multiple contracts directly with the Army for long-term storage of soldiers' household goods. These contracts, known as "non-temporary storage" contracts, are awarded pursuant to a complex bidding process, the essence of which is as follows. At certain intervals during the year, the companies submit separate lists of particular services that, in essence, constitute standing bids to render those services at a set price during a fixed period of time. While these bids are called "basic ordering agreements," they are actually executory and nonbinding. They do not bind the government until a particular bid is accepted. Each company submits its list of bids, or "basic ordering agreement," to the Army's regional office of military traffic management command in Atlanta, Georgia. The bids are reviewed by the Atlanta office and transmitted to Fort Rucker's transportation office. When a soldier needs long-term storage, the fort's transportation office consults the approved bid lists and awards the storage contract to whichever company has submitted the lowest bid for that service. At that time, and at that time only, does an actual contract come into being.

In the second type of activity, known as "line haul" agreements, the plaintiff companies act as agents for large interstate van lines engaged in long distance hauling to and from Fort Rucker. Under applicable Army regulations, each van line must work in conjunction with a qualified local agent or mover who coordinates all local aspects of the long distance move. Failure to secure a local agent renders the van line ineligible for Army contracts. The interstate van line submits bids for long distance hauling to the Army's regional office in Atlanta. Once those bids are reviewed, they are forwarded to the transportation office at Fort Rucker. When the need for long distance hauling arises, the transportation office awards contracts to van lines based on their past performance and cost. The interstate carrier selected for each job actually hauls household goods to a soldier's next post, while the company serving as that van line's qualified agent coordinates all local aspects of the shipment. Such agents are compensated for their essential role in the line haul process and for the work they do to facilitate moves on the local level.

ii.

Federal acquisition regulations limit the solicitation and award of government contracts to "responsible contractors only." 48 C.F.R. § 9.402(a). Before bids may be

awarded by the government, contractors must make an affirmative showing of such responsibility. § 9.103(b). Moreover, the government may temporarily suspend a contractor from future dealings whenever the following are present: first, it determines that "immediate action is necessary to protect the Government's interest," and, second, it obtains "adequate evidence" of, among other offenses, "a violation of the antitrust laws" by the contractor. § 9.407-2(a). "Adequate evidence" for purposes of the regulations is automatically provided by an indictment for a listed offense. § 9.407-2(b).[1]

Therefore, when an indictment for a listed crime has been returned by a grand jury, the agency has adequate evidence to suspend immediately the contractor "pending the completion of legal proceedings." § 9.407-1(b). However, the agency must promptly notify the contractor of such suspension. § 9.407-3(c). The contractor then has a right, upon request within 30 days of the notification, to present "matters in opposition" to the suspension. §§ 9.406-3(c), 9.407-3(c). This procedure is non-adversarial in nature unless a disputed issue of fact as to the existence of the indictment is raised. Under Army regulations, the opportunity to present matters in opposition must be afforded within 10 days of a timely request by the contractor for such an opportunity. The suspending official at the agency then has broad discretion to lift the suspension. §§ 9.406-4(c)(5), 9.407-3(d)(3). The suspending official's decision whether to lift the suspension then becomes a final agency action appealable to the courts under the Administrative Procedure Act, 5 U.S.C.A. §§ 701-706.

### iii.

Attorneys for the Department of Justice's Antitrust Division began investigating possible anticompetitive behavior by some of the plaintiffs in connection with their moving and storage business with the government some time prior to February 18, 1986. On that date, they invited counsel for the companies to meet with them in Washington, D.C. The purpose of the meeting was to afford the companies an opportunity to present any reasons why the government should not seek their criminal indictment for antitrust violations. At the conclusion of that meeting, the government attorneys informed the companies' counsel that indictments for antitrust violations would be sought and that an indictment would probably be returned. At that meeting, the government attorneys also explained that under federal acquisition regulations such an indictment would automatically result in suspension of the companies' contracting privileges with any executive agency of the government, unless that suspension was lifted by a competent authority, and that a conviction in the criminal trial would lead to disbarment of their civil contracting privileges.

On March 6, 1986, an antitrust indictment was returned against Coleman America and its president, ACME and its president, Hickman Moving and its president, and Thompson Company. It charged them with conspiring to eliminate competitive rates (1) on line haul shipments from Fort Rucker and (2) for long-term storage services in the Fort Rucker vicinity, in violation of the Sherman Act, 15 U.S.C.A. § 1.

---

1. Section 9.407-2 provides:

    (a) The suspending official may suspend a contractor suspected, upon adequate evidence, of

    (1) Commission of fraud or a criminal offense in connection with (i) obtaining, (ii) attempting to obtain, or (iii) performing a public contract or subcontract;

    (2) Violation of Federal or State antitrust statutes relating to the submission of offers;

    (3) Commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property; or

    (4) Commission of any other offense indicating a lack of business integrity or business honest that seriously and directly affects the present responsibility of a Government contractor or subcontractor.

    (b) Indictment for any of the causes in paragraph (a) above constitutes adequate evidence for suspension.

    (c) The suspending official may upon adequate evidence also suspend a contractor for any other cause of so serious or compelling a nature that it affects the present responsibility of a Government contractor or subcontractor.

#### iv.

On March 10, 1986, the indictment was forwarded to the Department of Defense in Washington, D.C. and referred to the contract fraud division of the Judge Advocate General for appropriate action. In a March 24 memorandum to his commanding officer, Captain Shawn T. Gallagher concluded that (1) the indictment provided adequate evidence of an antitrust violation pursuant to 48 C.F.R. §§ 9.403 and 9.407–2(b); (2) the criminal violations charged in the indictment provided adequate cause for suspension of Coleman American and its president, ACME and its president, Hickman Moving and its president and Thompson Company pursuant to § 9.407–2(a)(2); and (3) Admiral Van could also be suspended because the alleged criminal conduct of the president of Coleman American could be imputed to Admiral Van pursuant to §§ 9.407–5 and 9.406–5(a) or, in the alternative, because Admiral Van was affiliated with Coleman American's president pursuant to §§ 9.407–1(c) and 9.403.

Gallagher's commanding officer, Brigadier General Donald W. Hansen, had authority to suspend contractors doing business with the Army and, by extension, with any executive agency. *See* 48 C.F.R. § 9.407–1(d). By letter dated March 25, Hansen suspended each of the indicted companies and individuals and Admiral Van from "future contracting with any agency in the executive branch of the United States Government." In his letter, Hansen explained that "suspended contractors are excluded from receiving contracts" and that "agencies will not solicit offers from, award contracts to, renew contracts with, or consent to subcontracts with suspended contractors, unless the acquiring agency's head or his designee determines in writing that there is a compelling reason to do so." He added that the companies were also suspended from acting as agents or representative of other contractors. As to duration, Hansen noted that the suspension was "for a temporary period pending the completion of the investigations and such legal proceedings as may ensue."

Each of Hansen's letters enclosed copies of the indictment, Gallagher's memorandum, and the Army's Debarment and Suspension Procedures. The suspensions were based solely on the fact of indictment. Each letter advised the suspended company that it had the right, "within 30 days after the receipt of this notice, to submit, in person, in writing, or through a representative, information and argument in opposition to the suspension."

Notice of the suspensions was then distributed to Army contracting officers and other officers within the Department of Defense. Notice was also sent to the General Services Administration, and each of the suspended companies was placed on a consolidated list of debarred, suspended, and ineligible contractors. *See* 48 C.F.R. § 9.404. Plaintiff then filed the first four civil cases, described above, in which this court refused to enjoin the suspensions.

#### B. Termination of the Suspensions

On September 3, 1986, those indicted were acquitted of all criminal charges, and, as a result of the acquittals, the Department of the Army immediately terminated the suspensions and the companies were reinstated to the Army's list of usable agents and carriers. The plaintiffs here subsequently made inquiries to the Army Military Traffic Management Command about receiving make-up tonnage to compensate for the military carrier business they lost while suspended. On October 2, 1986, the Command denied the plaintiffs' requests for make-up tonnage.

#### C. The Current Lawsuit

In this action, their fifth lawsuit, the plaintiffs seek judicial review of the Army's decision denying them make-up tonnage. Also, because the Army's decision denying make-up tonnage rests, in part, on the propriety of its initial decision suspending the plaintiffs, the plaintiffs also seek judicial review, for a second time, of the initial suspension decision. Under Army procedures, make-up tonnage is awarded to carriers who were improperly suspended, and not to carriers whose proper suspensions are later lifted.

The plaintiffs therefore contend that these two administrative decisions of the Army—the suspensions and the refusal of make-up tonnage—were arbitrary, capricious, and an abuse of discretion, and were not in accordance with applicable law and regulations. In addition, they challenge the constitutionality of the regulations at issue.

## II. JURISDICTION

■ In this action, the plaintiffs raise numerous arguments with one primary goal: the plaintiffs want to be awarded make-up tonnage to compensate for the government contracts they did not receive while suspended from doing business with the Army. The defendants contend that this court lacks subject matter jurisdiction over the plaintiffs' claims because the claims are related to a contract with the government and the relief the plaintiffs seek exceeds $10,000 in monetary value. They contend that the proper forum for the plaintiffs' claims is the Claims Court.

The Claims Court is vested with exclusive jurisdiction over any claim exceeding $10,000 that is "founded upon any express or implied contract with the United States." 28 U.S.C.A. § 1491(a)(1). However, not all claims related to contract obligations are encompassed by Claims Court jurisdiction. *See, e.g., Sarasota, Fla. v. E.P.A.,* 799 F.2d 674, 680–81 (11th Cir.1986) (plaintiffs' challenge to federal grant decision was not a contract claim although "prime objective" of the plaintiffs was to receive $22 million in federal grant funds); *State of Tenn. v. Dole,* 749 F.2d 331, 335 (6th Cir.1984) (Claims Court does not have exclusive jurisdiction over action to recoup federal funds paid due to overcharges on government contracts because "the main issues founded in restitution, not contract"), *cert. denied,* 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985); *B.K. Instrument, Inc. v. U.S.,* 715 F.2d 713, 727 (2nd Cir.1983) (Court of Claims does not have exclusive jurisdiction of a claim alleging government contract was awarded in violation of statutory procedures). A plaintiff's claim falls outside of the Claims Court's limited jurisdiction if the claim does not specifically involve a "contractual undertaking" and the claim is not one for money damages. *Sarasota, Fla.,* 799 F.2d at 680.

The plaintiffs in this action allege that officers of the Department of the Army failed to apply properly the Army's procedures governing suspension of government contractors and the allotment of make-up tonnage. Alternatively, the plaintiffs challenge the constitutionality of the procedures. The plaintiffs' claims are tangential to any contractual relationship between the plaintiffs and the government. Moreover, the plaintiffs' claim for make-up tonnage is not a claim for money damages. To be sure, the court must guard against contract actions guised as actions for injunctive or declaratory relief, *Ingersoll–Rand Co. v. U.S.,* 780 F.2d 74, 79 (D.C.Cir.1985), but here the court is convinced that the plaintiffs' challenges to the Army's suspension procedures and the procedures allotting make-up tonnage are squarely within the jurisdiction of the federal district court.

## III. CLAIMS OF VIOLATIONS OF ADMINISTRATIVE PROCEDURES

■ The plaintiffs contend that officers of the Department of the Army failed to apply properly the Army's procedures governing suspension of government contractors and the allotment of make-up tonnage.

The court's standard for reviewing administrative final actions is defined by the Administrative Procedure Act, 5 U.S.C.A. §§ 701, *et seq.* The court may set aside "agency actions, findings and conclusions" only if they are "arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law." 5 U.S.C.A. § 706(2)(A). However, agency actions are presumed valid and a court may not substitute its judgment for the agency's judgment. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 413–14, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971); *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974). "The court's proper function in reviewing an agency's action is to determine whether

the agency 'has considered the relevant factors and articulated a rational connection between the facts found and the choice made,' " *Manasota–88, Inc. v. Thomas,* 799 F.2d 687, 691 (11th Cir.1986), *quoting Baltimore Gas & Electric Co. v. Natural Resources Defense Council, Inc.,* 462 U.S. 87, 105, 103 S.Ct. 2246, 2256, 76 L.Ed.2d 437 (1983), and the focal point of the court's review is the administrative record. *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973).

The suspension procedures governing Army contractors are set forth in plain language at 48 C.F.R. §§ 9.407–1 through 9.407–5. A contractor may be suspended upon adequate evidence that the suspension is in the public interest. 48 C.F.R. § 9.407–1. An indictment for antitrust violations is adequate evidence to suspend a contractor. § 9.407–2(a)(2); *see also Transco Security, Inc. v. Freeman,* 639 F.2d 318, 324 (6th Cir.) ("The 'adequate evidence' showing need not be the kind necessary for a successful criminal prosecution.... The matter may be likened to the probable cause necessary for arrest"), *cert. denied,* 454 U.S. 820, 102 S.Ct. 101, 70 L.Ed.2d 90 (1981), *quoting Horne Brothers v. Laird,* 463 F.2d 1268, 1271 (D.C.Cir. 1972). Contractors suspended upon evidence of an antitrust indictment are entitled to a post-suspension opportunity to present evidence that refutes the existence of an indictment or refutes that the suspended contractors are the parties named in the indictment. § 9.407–3(b); *see also Shermco Industries, Inc. v. Secretary of the Air Force,* 584 F.Supp. 76, 89 (N.D.Tex. 1984).

A review of the administrative record demonstrates that the plaintiffs' suspensions were conducted in the manner required by the regulations. First, it is undisputed that an antitrust indictment had been filed against them. Under the regulations, the antitrust indictment provided a rational basis for suspension. *See* 48 C.F.R. § 9.407–3(b)(2). Therefore, no additional fact-finding hearing was required. Second, as required by the suspension regulations, the plaintiffs received adequate notice of the suspension and were fully informed of their appeal rights. The notice of suspension advised the plaintiffs of the basis of the temporary suspension and advised the plaintiffs of their right to present information in opposition to the suspensions.

■ The plaintiffs contend that it was unlawful to suspend Admiral Van & Storage Company because it was not included in the indictment. The regulations, however, specifically state that "[s]uspension constitutes suspension of all divisions or other organizational elements of the contractor...." § 9.407–1(c). The plaintiffs do not refute the finding of the suspending officials that Admiral Van & Storage Company is an affiliate of Coleman; therefore, the suspension rightly included the company.

■ The plaintiffs further contend that the suspension proceedings were unlawful because the suspending officials failed to make a specific determination that "immediate action [was] necessary to protect the Government's interest." 48 C.F.R. § 9.407–1(b). The plaintiffs' contention is without merit. The suspending official need not make a formal finding that suspension is necessary to protect the government's interest. The court "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transportation, Inc. v. Arkansas–Best Freight System,* 419 U.S. at 285–86, 95 S.Ct. at 441–42; *see also Tackitt v. Prudential Ins. Co. of America,* 758 F.2d 1572 (11th Cir.1985). Evidence of bid-rigging is implicitly contrary to the Government's interest. Thus, the decision to suspend the plaintiffs was both reasonable and rational and the decision will not be overruled by this court.

The procedures governing the reinstatement of suspended army contractors is set forth in the Department of Defense, Personal Property Traffic Management Regulations, DOD 4500.34–R. The Commander of Military Traffic Management Command is given broad discretion to determine the tonnage level to which a carrier will be returned following suspension. The Com-

mander determines whether the carrier should return at:

(a) No loss of tonnage;

(b) A specific loss of tonnage; or

(c) The highest cumulative tonnage of any carrier on that TDR [traffic distribution record].

DOD 4500.34–R, Ch. 2, ¶ E.1.e(3) (1986).

■ The plaintiffs contend that the commander has abused his discretion by denying them make-up tonnage while permitting such in other suspension cases. The plaintiffs' contention is without merit. Discretionary application of the make-up tonnage provision is clearly in accordance with the regulations. The letter of make-up tonnage denial sent to each of the plaintiffs sets forth clearly the reasons the Commander determined that make-up tonnage should not be awarded. First, suspended agents are not eligible for make-up tonnage. Second, as explained previously, make-up tonnage is awarded to carriers who were improperly suspended, not to carriers whose proper suspensions are eventually lifted. When an administrator is vested with broad discretionary authority, a greater degree of proof is needed to demonstrate that the decision is arbitrary or capricious. *Burroughs Corp. v. U.S.*, 223 Ct.Cl. 53, 617 F.2d 590, 597 (1980). The letter of denial is sufficient evidence that the decision to deny the plaintiffs make-up tonnage was rational and in accordance with the applicable regulations.

■ The plaintiffs further contend that the administrative decisions to suspend the plaintiffs and to deny them make-up tonnage should be overturned because the actions were not taken to protect the government's interests, but rather were aimed at punishing the plaintiffs, in violation of 48 C.F.R. § 9.402(b). The plaintiffs failed to demonstrate any evidence in the administrative record supporting their contention. Nevertheless, the plaintiffs argue that they should be permitted to conduct discovery to ascertain the true motives of the suspending officials. The argument is meritless. If administrative findings are made at the time of the decision, only "a strong showing of bad faith or improper behavior" will justify discovery and factual inquiry outside the administrative record. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. at 420, 91 S.Ct. at 825. The court discerns no evidence of bad faith or improper conduct on the part of the government. There is, therefore, no justification for the court to permit inquiry beyond the original administrative record.

## IV. CONSTITUTIONAL CHALLENGES

### A. The Suspensions

■ The plaintiffs first argue that the procedures attending their suspensions violated the due process clause of the fifth amendment. Due process under the fifth amendment mandates that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. Amend. V. Constitutionally mandated procedures, of the type claimed by plaintiffs, are required only if the plaintiffs have a "property" or "liberty" interest at stake. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982); *Economic Development Corp. of Dade County, Inc. v. Stierheim*, 782 F.2d 952, 953–54 (11th Cir.1986) (per curiam).

The plaintiffs contend that they possess a protected property interest in the right to be considered "presently responsible" contractors and, as such, to bid on government contracts. They argue that federal acquisition regulations create such an entitlement. *See, e.g.*, 48 C.F.R. § 9.407–2 (listing specific causes for suspension of right to bid on government contracts). However, deprivation of an opportunity to bid on government contracts does not impinge a property interest because federal acquisition regulations are designed to benefit the government, not private contractors; they therefore do not create an entitlement for private contractors. *See ATL, Inc. v. United States*, 736 F.2d 677, 683 (Fed.Cir.1984); *Transco Security, Inc. v. Freemen*, 639 F.2d 318, 321 (6th Cir.), *cert. denied*, 454 U.S. 820, 102 S.Ct. 101, 70 L.Ed.2d 90 (1981); *Shermco Industries v. Secretary of the Air Force*, 584 F.Supp. 76, 87 n. 7

(N.D.Tex.1984). *Cf. Cheek v. Gooch,* 779 F.2d 1507, 1508 (11th Cir.1986) (per curiam) (no property interest in opportunity to acquire state liquor license). Since the plaintiffs have no property interest in an opportunity to bid on contracts, no specific process is constitutionally mandated before that opportunity is extinguished.

The plaintiffs also contend that the corporate liberty interest—"the right to be free from stigmatizing governmental defamation having an immediate and tangible effect on [their] ability to do business"— was implicated by the suspension and thus entitled them to some type of name-clearing hearing prior to the suspension. *See Old Dominion Dairy v. Secretary of Defense,* 631 F.2d 953, 961–962 (D.C.Cir.1980); *see also Clemons v. Dougherty County,* 684 F.2d 1365, 1371 & n. 7 (11th Cir.1982). They contend that a protected liberty interest must be recognized in government contracting cases whenever the suspension is based on charges that the contractor lacks business integrity. *Old Dominion Dairy,* 631 F.2d at 963; *see also Conset Corporation v. Community Services Administration,* 655 F.2d 1291, 1295–1298 (D.C.Cir. 1981). Whether the petitioners have a liberty interest is an issue the court need not reach because, if they do, they are still not entitled to a hearing.

In the cases relied on by the petitioners, the charges were based not on an indictment returned by a grand jury but on the government's unilateral determination that the contractor's actions warranted suspension. The stigma flowed directly from charges leveled by the government agency charged with oversight responsibility. *See, e.g., ATL, Inc. v. United States,* 736 F.2d 677 (Fed.Cir.1984). Here, by contrast, any stigma that might attach flows not from underlying charges advanced by the government, but from the existence of the indictment itself. Furthermore, in the cases relied on by the petitioners, the truth of the stigmatizing charge was hotly disputed. Here, no such dispute can be shown. The indictment's existence has been conceded by counsel. The law is well established that, without a factual dispute

about the truth of the cause of stigma, no name-clearing hearing is constitutionally mandated. *Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977) (per curiam) (name-clearing hearing not required where employee does not challenge truth of basis of suspension); *Moore v. Knowles,* 482 F.2d 1069, 1073 (5th Cir.1973) ("pendency of the indictments made it unnecessary for [school] board to conduct a [name-clearing] hearing").

The plaintiffs next argue that the suspensions violated their sixth amendment right to counsel. The argument is meritless. Sixth amendment protections must be accorded when deprivation of personal liberty may result from a proceeding. *Ridgway v. Baker,* 720 F.2d 1409, 1413 (5th Cir.1983); *see also Walker v. McLain,* 768 F.2d 1181, 1183 (10th Cir.1985), *cert. denied,* 474 U.S. 1061, 106 S.Ct. 805, 88 L.Ed.2d 781 (1986). Contractor suspension proceedings involve no potential loss of a protected personal liberty. The contractor is merely temporarily denied the privilege of doing business with the government. *See generally Transco Sec., Inc. of Ohio v. Freeman,* 639 F.2d at 321.

Additionally, the plaintiffs argue that, in violation of Fed.R.Crim.P. 16, the suspension proceedings expanded the right of the government to discovery. The court fails to discern the relevancy of Rule 16. The government's right to discovery under Rule 16 is contingent upon the plaintiffs' exercise of their right to discover government evidence. The scope of the plaintiffs' post-suspension hearing was limited to evidence refuting the existence of an indictment or refuting that the plaintiffs were named in the indictment. The limits of the hearing posed little opportunity for abuse of discovery.

The plaintiffs contend that they could not adequately exercise their right to contest suspension because this would have required Patrick Coleman, the only individual capable of refuting the charges, to waive his fifth amendment right against self-incrimination. The plaintiffs' contention is meritless. The fifth amendment privilege against self-incrimination may be

asserted only when the individual is confronted by "substantial" and "real" hazards of self-incrimination. *Marchetti v. United States*, 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968); *United States v. Payne*, 750 F.2d 844, 863 (11th Cir.1985). The federal regulations provide that contractors suspended because of an antitrust indictment are entitled to provide "information and argument in opposition to the suspension including any additional specific information that raises a genuine dispute over the material facts. . . ." 48 C.F.R. § 9.407–3(c). When the suspension is based on an antitrust indictment, there is but one material fact: Did a valid antitrust indictment exist against the plaintiffs? The submission of evidence denying the existence of an indictment or denying that the defendants were named in the indictment clearly would have posed no hazard of self-incrimination for Patrick Coleman.

■ Lastly, the plaintiffs argue that according non-indicted companies, but not indicted companies, a fact-finding hearing violates equal protection under the fifth amendment. "Statutory classifications are valid if they bear a rational relation to a legitimate government purpose." *Regan v. Taxation with Representation of Washington*, 461 U.S. 540, 547, 103 S.Ct. 1997, 2001–02, 76 L.Ed.2d 129 (1983); *see also Burns v. United States*, 9 Cl.Ct. 273 (1985) (differing standard for discharge of Army reserve officers and regular officers is rationally related to government objectives). The purpose of a fact-finding hearing is to determine whether "adequate evidence" exists to suspend a contractor in a forum that accords the contractor due process safeguards. A fact-finding hearing for an indicted contractor would serve no purpose because the indictment is "adequate evidence" to suspend.

## B. The Denial of Make–Up Tonnage

■ The plaintiffs similarly argue that the regulations depriving them of make-up tonnage violate the due process requirements of the fifth amendment. The plaintiffs' due process claims are again meritless.

Apparently, the plaintiffs contend that they have a protected property interest in the right to be awarded make-up tonnage because other contractors have been granted make-up tonnage. This contention is not supported by law. "When dispensation of a statutory benefit is clearly at the discretion of an agency, or when a statute only provides that certain procedural guidelines be followed in arriving at a decision, then there is no creation of a substantive interest protected by the Constitution." *Jean v. Nelson*, 727 F.2d 957, 981 (11th Cir.1984), *aff'd*, 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985), *See also Cunningham v. Adams*, 808 F.2d 815, 820–21 (11th Cir.1987). The awarding of make-up tonnage is a discretionary determination made by the Commander of Military Traffic Management Command. The plaintiffs have no protected interest in being awarded make-up tonnage. Therefore, no constitutionally mandated procedure was required before plaintiffs could be denied their requests for make-up tonnage.

■ The plaintiffs further argue that the decision to deny them make-up tonnage while awarding it to other contractors violated equal protection under the fifth amendment. This argument is meritless. First, the regulations governing make-up tonnage do not affect fundamental interests and no suspect classifications are involved. *E & T Realty v. Strickland*, 830 F.2d 1107 (11th Cir.1987), *cert. denied*, — U.S. ——, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988). Thus, the mere allegation that under a discretionary regulation, some contractors have been denied make-up tonnage while other contractors were awarded make-up tonnage does not suggest unconstitutional disparate treatment. *Id.*

Second, the make-up tonnage regulations do not violate equal protection requirements because the discretionary element of the regulations is rationally related to the government's legitimate interest in ensuring efficient storage and carrier services for military officers and their families. *See, e.g., Regan v. Taxation with Representation of Washington*, 461 U.S. at 547, 103 S.Ct. at 2001–02.

## V. CONCLUSION

Summary judgment is appropriate in this case. The party seeking summary judgment bears the initial burden of coming forward with evidence demonstrating the absence of a genuine issue of material fact. However, once the movant comes forward with such evidence, the nonmoving party must "go beyond the pleadings" in demonstrating the presence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Carlin Communication, Inc. v. Southern Bell Tel. & Tel. Co.,* 802 F.2d 1352 (11th Cir.1986). The plaintiffs are under the erroneous impression that their bare allegations are sufficient grounds to permit extensive discovery. The plaintiffs are convinced that discovery will confirm the validity of their constitutional and administrative procedure claims. As the court has previously stated, the standard for judicial review of administrative final actions is clear: If administrative findings are made at the time of the decision, only "a strong showing of bad faith or improper behavior" will justify discovery and factual inquiry outside the administrative record. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. at 420, 91 S.Ct. at 825.

The plaintiffs have failed to satisfy the requirement set forth in *Citizens to Preserve Overton Park, Inc.* Therefore, the court's inquiry is limited to the original administrative record. Based on that record, the court concludes that the suspension of the plaintiffs and the denials of make-up tonnage followed the requirements set forth in the regulations. Moreover, the regulations violate no constitutional protections.

An appropriate judgment will be entered.