**Douglas W. ABRUZZO**

v.

**The UNITED STATES.**

**No. 141–73.**

United States Court of Claims.

April 16, 1975.

la A. Hills, New York City, for defendant.

Before NICHOLS, KUNZIG and BENNETT, Judges.

## OPINION

### PER CURIAM:

This case comes before the court on plaintiff's exceptions to the opinion, findings of fact,\* and conclusion of law filed, July 22, 1974, by Trial Judge Hal D. Cooper pursuant to Rule 134(h). Upon consideration thereof, together with the briefs of counsel (oral argument having been waived) the court agrees with the trial judge's opinion as hereinafter set forth. We do not wish to be understood, and do not understand the trial judge as holding, that Correction Boards, under 10 U.S.C. § 1552(a), lack authority to grant backdated promotions in appropriate cases. The court affirms and adopts the said opinion and findings as the basis for its judgment in this case. Therefore, the court concludes that the plaintiff is entitled to recover on his claim for per diem, in the sum of $2,826, and judgment is entered for plaintiff in that sum. In other respects the plaintiff is not entitled to recover and the petition is dismissed.

### OPINION OF TRIAL JUDGE

COOPER, Trial Judge: Plaintiff, a Marine Corps reserve officer and an intensely dedicated military aviator, presents essentially two claims for relief, the first relating to his promotion, back pay, allowances, and an interservice transfer to the Air Force, while the second seeks an award for per diem accrued while he was on active duty with the Marine Corps. The Board for Correction of Naval Records granted plaintiff only partial relief on the first claim, while the per-diem claim was denied in its entirety by the Comptroller General.

C. Valentine Bates, Gainesville, Fla., attorney of record for plaintiff. Jones, Bates & DeCarlis, Gainesville, Fla., of counsel.

Stephen Schachman, Washington, D. C., with whom was Asst. Atty. Gen. Car-

\* Whereas the court adopts the trial judge's separate findings of fact, which are set forth in his report filed July 22, 1974, they are not printed herein since such facts as are necessary to the decision are contained in his opinion.

Based on the record before the Board, and the evidence received at trial, it is concluded that the additional relief requested on the first claim must be denied, largely as a matter of law, but that plaintiff is entitled to a judgment for the claimed per diem.

I

Plaintiff was a tactical fighter pilot for the Marine Corps, serving from 1968 to 1971, with a tour of duty in Vietnam. Upon returning to the United States in January 1970, plaintiff submitted a request for an interservice transfer to the Air Force; however, the Marine Corps failed properly to process the transfer request, with the result that plaintiff's request never reached the Air Force. Meanwhile, plaintiff became involved in some incidents which resulted in his receiving nonjudicial punishment and, ultimately, his hospitalization for psychiatric treatment. By the time he was declared fit for duty, his obligated 3 years of duty had been completed and he was released on February 1, 1971.

Throughout 1970, and up to the present, plaintiff has maintained that his request for an interservice transfer resulted in a broad pattern of discrimination against him which caused him to suffer a nervous breakdown and which has destroyed his desired career as a military aviator.

Although Marine Corps' regulations plainly required each transfer request to be processed through channels to the Secretary of the Navy and then to the Secretary of the Air Force, plaintiff's request progressed only to Marine Corps Headquarters where it was disapproved and placed in his records. Even after plaintiff obtained the aid of congressional inquiries regarding the matter, the Marine Corps did not properly forward the request to the Secretary of the Navy. When, subsequent to his release, plaintiff was finally able to have his request reviewed by the Secretary of the Navy, it was too late to have it considered on its merits because he was no longer on active duty. It is clear that the failure of the Marine Corps properly to process the transfer request effectively negatived plaintiff's right to have the transfer considered on its merits.

In May 1971, plaintiff sought relief from the Board for Correction of Naval Records, asking, *inter alia*, that an adverse fitness report he had received be removed from his records; that his nonjudicial punishment be reviewed and removed from his records; that he be promoted to captain, with a date of rank commensurate with his peers; and that the Board aid him in his request for a transfer. While his request for relief was pending before the Board, he was passed over for promotion a second time and was involuntarily discharged.

On February 26, 1973, the Board, relying on a medical opinion that plaintiff's actions were reasonably attributable to a psychotic condition, directed removal from his records of all material regarding the nonjudicial punishment and the adverse fitness report. The Board further directed that his records should be corrected to show that he was not previously considered for promotion, so that he could be considered for promotion in 1973. The Board declined, on jurisdictional grounds, to take any action on his transfer request. Thereafter, plaintiff's discharge was canceled, he was reinstated in the Marine Corps Reserve, and, in 1973, he was selected for promotion to captain.

Believing that he has received less than all of the relief to which he is entitled, plaintiff asks this court (1) to set aside his release from active duty, (2) to award him a date of rank of captain commensurate with his peer group, (3) to grant him full pay and allowances of an active-duty officer, from February 1, 1971, (4) to order his appointment as an active-duty reserve officer in the Air Force for a tour of duty of not less than 3 years, and (5) to direct the Naval Bureau of Medicine and Surgery to reevaluate the diagnosis that he was suffering from delusions of discrimination and was paranoid.

■ With respect to his release from active duty, plaintiff maintains that it should be declared null and void because of the procedural defects in the Marine Corps' handling of his interservice transfer request. While it is clear that there were such defects, that is no basis on which to give plaintiff the requested relief. Plaintiff incorrectly equates his undoubted right to request an interservice transfer to an obligation by the Marine Corps to retain him on active duty until that request has been finally approved or disapproved. In fact, no such obligation exists. Plaintiff's tour of duty was not in any way related, or otherwise contingent on, the proper processing of the transfer request. To the contrary, reserve officers like plaintiff can, under 10 U.S.C. § 681(a), be released from active duty at any time [1] and the conditions and circumstances governing that release rest within the sound discretion of the service. Denton v. United States, 204 Ct.Cl. 188 (1974); Mercereau v. United States, 155 Ct.Cl. 157, 158 (1961).

■ Moreover, the evidence overwhelmingly compels the conclusion that even had the transfer request been properly processed, it would have been disapproved by the Air Force. Hence, the failure properly to process the request, while inexcusable, must be viewed as harmless error.

There being nothing improper in his release from active duty, it follows that plaintiff's claim for back pay and allowances for the period subsequent to his release must also be denied.

■ What has been said also bears on plaintiff's request that this court order plaintiff's appointment as an active-duty officer in the Air Force. It is well settled that it rests within the discretion of the particular armed service whether to place a reserve officer on active duty, 10 U.S.C. § 672(d) (1964); DeBow v. United States, 434 F.2d 1333, 1336, 193

Ct.Cl. 499, 504 (1970), cert. denied, 404 U.S. 846, 92 S.Ct. 150, 30 L.Ed.2d 84 (1971); Anthony v. United States, 179 Ct.Cl. 923 (1967); Merriott v. United States, 163 Ct.Cl. 261, 264 (1963), cert. denied, 379 U.S. 838, 85 S.Ct. 76, 13 L.Ed.2d 45 (1964). It is equally clear that the transfer of an individual from one service to another lies within the sound discretion of the service secretaries involved and the Secretary of Defense. For this court to order the Air Force to accept plaintiff as an active-duty reserve officer would be to substitute its judgment for the discretion plainly lodged in that service and would be wholly inappropriate. Anthony v. United States, *supra; cf.* Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953).

■ With respect to plaintiff's request that his promotion to captain be back-dated to that of his peers, the same problem exists. The federal courts are not in the promotion business and the relief which plaintiff here seeks—i. e., the backdating of his promotion—is beyond the power of this court to grant. Brenner v. United States, 202 Ct.Cl. 678 (1973), cert. denied, 419 U.S. 831, 95 S.Ct. 54, 42 L.Ed.2d 56 (1974); Muldonian v. United States, 432 F.2d 443, 193 Ct.Cl. 99 (1970); Clinton v. United States, 423 F.2d 1367, 191 Ct.Cl. 604 (1970). This is so notwithstanding the fact the Board found it was an injustice and unfair to plaintiff for him to have been previously considered for promotion with the derogatory material in his records, and notwithstanding the fact plaintiff was immediately selected for promotion once that material was removed. The difficulty is simply that the promotion of an officer is a discretionary matter dependent on the particular circumstances and needs of the service. There is no basis from which it may be concluded that the circumstances and needs of the Marine Corps, in 1973, were the same as they

---

1. 10 U.S.C. § 681(a) (1970) provides, in pertinent part, as follows:

"681. Reserves: release from active duty

"(a). Except as otherwise provided in this title, the Secretary concerned may at any time release a Reserve under his jurisdiction from active duty."

were in 1971 and 1972, or that the discretion to promote would, in fact, have been exercised favorably to plaintiff in either of those two years. *Clinton, supra.*

■ Finally, plaintiff asks this court to find that he was discriminated against by the Marine Corps and to order a reevaluation of the diagnosis of "paranoid state" and "delusions" in light of that finding. These charges of discrimination were presented to the Board, but in the context of seeking removal of the NJP and the unsatisfactory fitness report from his records. Plaintiff did not ask the Board specifically to correct his medical records or to direct a reevaluation thereof. Having failed to request that relief from the Board, this court will normally not entertain it here. Keef v. United States, 185 Ct.Cl. 454, 469 (1968).

■ However, it appears that there is no basis on which to grant the relief requested, in any event. Plaintiff's argument is premised on the assumption that the diagnosis of paranoid state rested either solely or in important part on his allegations of discrimination and that, therefore, if, in fact, the discrimination existed, the diagnosis must have been incorrect. Aside from the fact that the conclusion does not necessarily flow from the premise, the difficulty immediately confronted by this argument is that plaintiff did not place in evidence his medical history[2] which would have indicated the basis for the diagnosis. Without that, there is no more reason to assume that the diagnosis was based solely on plaintiff's allegations of discrimination than there is to assume the diagnosis was based on a thoroughgoing, careful psychiatric examination. If anything, the presumed competence and integrity of the Navy doctors treating him would support the latter conclusion.

Moreover, the Board had available to it the opinion of the Bureau of Medicine and Surgery which reviewed plaintiff's medical history, concurred in the diagnosis of paranoid state, and concluded that plaintiff's judgment had been temporarily impaired by that psychiatric illness. In light of that opinion, and in the absence of any evidence whatever that there was any error in the diagnosis, there is no basis for directing a reevaluation of plaintiff's medical records.[3]

Nor is the evidence of discrimination adduced at trial of such a nature as to demonstrate a compelling need for a reevaluation. Plainly, mistakes were made by the Marine Corps and, in the case of plaintiff's transfer request, regulations were ignored. With respect to the POV incident (findings 9, 10), plaintiff was treated outright unfairly and in a manner that was directly contrary to the treatment accorded others. However, when viewed as a whole, the claimed broad pattern of discrimination simply does not emerge. What does emerge is a picture of plaintiff experiencing some emotional difficulties, largely due to personal problems he was then having, and the occurrence of a series of unrelated incidents which, when taken with plaintiff's intense desire to fly and his frustration at being assigned to a nonflying position, deepened his emotional problems and resulted in his being less than patient in dealing with those incidents. Plaintiff's problems were compounded by the Marine Corps being less than understanding of plaintiff's frustrations, its refusal to admit any error or mistake, and its inflexibility in its demanded standard of conduct without regard either to plaintiff's emotional state or the impact its errors and mistakes were having on plaintiff.

In summary, plaintiff has failed to show the Board acted arbitrarily or ca-

---

2. Specifically, the Medical Board Report # J–600517 from the U.S. Naval Hospital, Philadelphia, Pennsylvania, is not included in the record before the court.

3. It should be noted in this connection that plaintiff has, in a sense, received a benefit from that diagnosis. Relying on that diagnosis, the Board ordered the derogatory material expunged from his record. Plaintiff's present attempt to set aside the medical diagnosis would, in effect, undercut the very basis on which the Board gave him relief and would, presumably, result in restoration of at least the adverse fitness report to his records.

priciously in affording plaintiff the relief it did, or that he is entitled to any additional relief that is within the power of this court to grant.

## II

Plaintiff's claim for per diem arises out of his hospitalization at Charleston, South Carolina, on May 29, 1970; his transfer to Philadelphia on June 13, 1970; and the Marine Corps' order of June 18, 1970, transferring him "by service records" to Charleston. Plaintiff maintains that, having been transferred by service records only so far as Charleston, his duty in Philadelphia, from the date of his release from the hospital on September 25, 1970, to his release from active duty on February 1, 1971, was temporary duty for which he is entitled to receive per diem.

The Marine Corps initially gave plaintiff an advance per diem payment; then refused to give him any more; then recovered the advance without determining whether he was on temporary duty and entitled to per diem; and, finally, after plaintiff had been released from active duty, the Comptroller General declared that a mistake had been made, that the Marine Corps had *intended* Philadelphia to be plaintiff's permanent station, and that plaintiff was entitled to *no per diem.*

The only objective evidence in the record establishes that plaintiff's permanent duty station was, by the order of June 18, 1970, changed from Beaufort to Charleston, and no farther. There is no evidence the Marine Corps at any time intended Philadelphia to be plaintiff's permanent duty station. Even defendant does not contend that the hospital in Philadelphia was intended to be plaintiff's permanent duty station and the order of September 25, 1970, transferring plaintiff from the hospital in Philadelphia to the Marine Barracks in Philadelphia "for duty awaiting appearance be-

fore the Physical Evaluation Board," clearly indicates the temporary nature of the duty plaintiff was to perform thereafter. The mere fact that duty ultimately turned out to be of a prolonged duration is not decisive of what the Marine Corps intended when it issued its orders to plaintiff. *Cf.* Trifunovich v. United States, 196 Ct.Cl. 301, 311 (1971).

Nor can the contention that the Marine Corps made a mistake be given any weight. If a mistake was made, and there is nothing in the record to support the speculation by the Comptroller General that such is the case, it was defendant's mistake, not plaintiff's. Plaintiff had no control over his duty status; defendant did. Defendant had ample opportunity to indicate its intentions and to correct any mistakes it may have made with respect to plaintiff's duty status, but when squarely presented with the question, it declined to do so, apparently electing to deny plaintiff per diem while leaving his status undetermined.

█ Under the circumstances, it is concluded that Charleston was plaintiff's permanent duty station, that Philadelphia was a temporary duty station, and that plaintiff is entitled to receive per diem as claimed.

Plaintiff claims per diem at $25 per day from September 25, 1970 to February 1, 1971, for a total of $3,225,[4] less a credit of $399 paid to him on February 1, 1973. Defendant does not contest these amounts. Accordingly, plaintiff is entitled to judgment in the amount of $2,826.

## CONCLUSION OF LAW

Based upon the findings of fact and the foregoing opinion, which are adopted by the court and made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover, and judgment is entered for plaintiff in the sum of $2,826.

---

4. Plaintiff's claim for interest is barred by statute. 28 U.S.C. § 2516(a) (1964). Trifunovich v. United States, *supra* at 304 n. 1.