On April 20, 1979 the court entered the following order:
Before Davis, Judge, Presiding, Kashiwa and Kunzig, Judges.
Plaintiff, a former Army reserve officer on active duty for a considerable time, sues for back pay and restoration on the ground that he was improperly released from active duty (and later invalidly discharged from the ready reserve). Both parties have moved for summary judgment and there is no triable issue as to any material fact. The court has considered the written submissions (including the records and documents filed) and has also had the benefit of oral argument.
Plaintiff began active duty as an Army reserve officer in 1968, after having served on active duty as an enlisted man for over nine years. In 1972 he was stationed at Giessen, West Germany, as an intelligence officer. Certain allegations were made against him relating to his professional fitness and integrity in intelligence work. As a result, his immediate commander suspended him (on March 2, 1972) from access to classified information pending the results of the investigation. At the same time an official "Report for *636 Suspension of Favorable Personnel Action” — based on that investigation — was prepared by Army headquarters in Europe and circulated (including a copy to Army Headquarters at the seat of government). There is no record of any determination of the charges which led to the lifting of plaintiffs security clearance; apparently none was ever made. Nor was the suspension of favorable personnel action ever lifted.
A year later, in March 1973, plaintiffs local intelligence commander informed him that the commander intended to recommend plaintiffs elimination from active duty and from the Army for moral and professional derelictions. The various charges specified in that letter of notification seem to differ from those on which the earlier suspension of security clearance was grounded (though this is not entirely clear). Some time thereafter, in May 1973, this recommendation was approved by the Commanding General in Europe (and of the 7th Army). Plaintiff was offered a chance to resign but refused. There is no adequate showing that any further official action was taken on these elimination recommendations or that elimination proceedings were ever ordered or instituted.
Almost simultaneously, but without knowledge of these recommendations that elimination proceedings be instituted or of plaintiffs prior suspension from favorable personnel action, plaintiff was being considered, along with numbers of other reservists, for release from active duty (under a reduction in force program) by a Department of the Army Active Duty Board at Army Headquarters in the United States. Plaintiff was selected by the Board for involuntary relief from active duty, and was so informed by a letter of May 31, 1973.[1] In June 1973 plaintiff, without protest, acknowledged receipt of this notice of release from active duty and requested release on September 21, 1973. *637 He was actually released at Fort Knox, Kentucky (near his home) on September 19, 1973.
Shortly thereafter plaintiff applied for continuance in the ready reserve and was apparently accepted. Probably because of his active duty (before his release) for part of his first year for qualifying for reserve retirement points (August 5, 1973 - August 4, 1974), he did qualify for that year, but in the two succeeding years he did nothing to earn enough points toward retirement. As a result, he was notified (in November 1977) that he would be removed from active reserve status unless he completed and returned the attached endorsement within 15 days. He never returned the endorsement and, accordingly, was discharged, honorably, from the ready reserve on April 1, 1978 (after this suit had been begun).[2]
The major of plaintiffs claims is that his release from active duty (in September 1973) was invalid because it could not be effected while (1) his suspension (in March 1972) from favorable personnel action was still outstanding, and (2) the elimination proceedings recommended in Europe in March-May 1973 were still unresolved. We see no merit in either contention.
There is no doubt, in the first place, that reserve officers like plaintiff "can, under 10 U.S.C. § 681(a), be released from active duty at any time and the conditions and circumstances governing that release rest within the sound discretion of the Service.” Abruzzo v. United States, 206 Ct.Cl. 731, 737, 513 F.2d 608, 611 (1975). Plaintiff does not challenge this power, nor does he claim any procedural defect in the determination of the Active Duty Board (other than the alleged impediments cited above). The Board, as we have said, was unaware of plaintiffs favorable-action suspension or of the European recommendations for elimination.
While AR 600-31 (dealing with "Suspension of Favorable Personnel Actions for Military Personnel in National Security Cases and Other Investigations or Proceedings”) does include release from active duty among "favorable personnel actions” and directs suspension of such favorable actions for officers "against whom an investigation is *638 initiated by military or civilian authorities concerning credible allegations or incidents which reflect unfavorably upon their character or integrity,” the regulation was plainly designed for the Army’s own benefit and protection — not to give any individual rights to servicemen. The purpose was obviously to help forestall the Army’s inadvertently giving a benefit to an officer who was then under serious inquiry, rather than to ensure that the soldier had the opportunity to obtain a final determination of clearance before he received a promotion or other favorable action. Accordingly, if the Army failed to follow the regulation in this instance, plaintiff has no standing to complain.
Moreover, para. 3-6 of AR 635-1 ("Relief from Active Duty of Non-regular Officers and Warrant Officers”) specifically indicates that an officer (like plaintiff) as to whom a report of suspension of favorable personnel action is on file can be relieved from active duty on approval of Headquarters, Department of the Army. The record suggests strongly that such approval was in all probability given here since plaintiffs notification of relief from active duty came from Army headquarters (U.S. Army Military Personnel Center) and was signed "By Order of the Secretary of the Army.” Plaintiff has failed to raise a triable issue on this point.
As for the alternative point that release from active duty was barred by the European recommendations that elimination proceedings be instituted against plaintiff, the simple answer is that those recommendations were merely recommendations and no such proceedings were ever initiated. Chapter 5 ("Elimination”) of AR 635-100 clearly indicates, in para. 5-14g and Section VI, that elimination proceedings are actually begun by reference to a selection board. Cf. Font v. United States, 219 Ct.Cl. 335, 593 F.2d 388 (1979). That never happened in plaintiffs case; neither the European commander nor Army headquarters in Washington referred the charges to such a board.[3] In that *639 situation there was nothing to prevent plaintiff from being reduced in force under the normal and routine procedure for releasing reserve officers from active duty. There is, in short, nothing in either statute or regulation giving plaintiff a right to prevent his reduction-in-force release merely because preliminary charges or recommendations have been levied against him.
Finally, there is no substance to plaintiffs point that he could not be discharged from the ready reserve in April 1978 (after this suit had been brought). That discharge was routine because he had failed, of his own volition, to earn enough points to stay in the reserve. The filing of suit in this court did not prevent that routine and authorized action, and had nothing to do with it.
Thus, plaintiff fails in all his material points and has no cognizable claim. He insists that he has been deprived of his "right” to clear his name before being separated from the service, but there is no such "right” where the charges never reached beyond the tentative and inchoate stage and status they had in this case. We add, too, that so far as the record reveals plaintiff does not seem to have been troubled by this alleged deprivation of the chance to answer the charges until some years after his release from active duty.
It is ordered and concluded therefore that defendant’s motion for summary judgment is granted, plaintiffs motion for summary judgment is denied, and the petition is dismissed.
Plaintiffs motion for rehearing and to amend the pleadings was denied June 29, 1979.

 This letter explicitly said: "Selection for release from active duty is meant in no way to reflect unfavorably upon performance of duty. You have served faithfully and well during a difficult and demanding time in our nation’s history. The necessity to release you is dictated solely by the needs of the Service and is sincerely regretted.”
The pertinent regulation on such involuntary releases from active duty because of reduction in force is AR 635-100, which likewise provides (in para 5-58b) that "Officers designated for release under this paragraph [i.e. those due to "budgetary or authorization limitations”] are not considered ineffective or substandard in duty performance. Their release is dictated by the needs of the Service.”

 The petition was filed in this court on December 6, 1977.

 Plaintiff also claims that he had a right to a field board of inquiry on the security charges against him under AR 604-10 ("Military Personnel Security Program”), but if he had that right (in the total absence of some formal proceeding against him on security grounds) he had to request such a board (see para. 6-2b) and the record contains no such request or indication of one nor has plaintiff filed an affidavit swearing that he made such a request. It is undisputable from the record that no proceeding to eliminate plaintiff on security grounds was ever authorized or initiated.