ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT’S MOTION TO DISMISS, GRANTING DEFENDANT’S MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF’S CROSS-MOTION FOR SUMMARY JUDGMENT
 

 KAY, Chief Judge.
 

 BACKGROUND
 

 Currently before the Court is the motion to dismiss of defendant John H. Dalton, Secretary of the Navy, against plaintiff Jackie R. Briggs and both parties’ cross-motions for summary judgment. Briggs was a Captain in the Naval Medical Corps Reserve serving on active duty. He was detached for cause from command for “loss of confidence in his ability to command” based on two investigations into complaints of,
 
 inter alia,
 
 abuse of personnel, sexual harassment, misuse of government resources, attending to personal business during duty hours, and threats of retaliation allegedly made by Plaintiff against persons he perceived to have initiated complaints. Subsequently, Briggs was involuntarily released from active duty.
 

 On March 4,1993, Briggs filed his first suit against Frank Kelso, then Secretary of the Navy, and others, alleging that his detachment for cause was unlawful. On March 11, 1993, Briggs moved for a temporary restraining order. On March 15, 1993, Judge King denied Briggs’ motions for temporary restraining order and preliminary injunction. On March 19, 1993, Briggs appealed to the Ninth Circuit. On April 12, 1993, Briggs filed a notice of dismissal. On June 8, 1995, following a denial of his appeal to the Board for Correction of Naval Records, Briggs filed the instant suit against defendant Dalton.
 

 On February 26, 1996, the Court heard Defendant’s motion to dismiss and both par
 
 *756
 
 ties’ motions for summary judgment. Both parties appeared through counsel. Upon considering the papers filed by all parties, the arguments of counsel, and the record, the Court hereby GRANTS IN PART AND DENIES IN PART Defendant’s motion to dismiss, GRANTS Defendant’s motion for summary judgment, and DENIES Plaintiffs cross-motion for summary judgment.
 

 FACTS
 

 Plaintiff Jackie R. Briggs is a licensed, board certified doctor of osteopathic medicine. He joined the Navy Medical Corps in July 1979 at the age of 43 with the initial rank of lieutenant commander.
 

 On October 3,1988, the Department of the Navy, Bureau of Personnel (BUPERS), notified Briggs, then a Captain with the Naval Medical Corps Reserve serving on active duty, that he was authorized to serve on active duty until 1995, so long as he otherwise remained eligible for active Naval service.
 

 On February 15,1990, Briggs reported for duty with the Naval Medical Clinic, Pearl Harbor, Hawaii. On November 22, 1991, Briggs assumed command of this clinic. On July 2, 1992, Admiral W.A. Earner, United States Navy, Commanding Officer of Naval Base, Pearl Harbor, who at the time was Briggs’ commanding officer, received three “Hotline/Integrity and Efficiency” complaints passed on by the Commander-in-Chief, United States Pacific Fleet, Pearl Harbor, Hawaii and the Chief, Bureau of Medicine and Surgery (BUMED), Washington, D.C., alleging that Briggs had committed various forms of misconduct.
 
 See
 
 Defendant’s Motion, Exhs. 4 and 5.
 

 In response, Admiral Earner appointed an officer to investigate the allegations. Based on the officer’s investigation, on July 9,1992, Admiral Earner wrote to BUMED, requesting that the BUMED Inspector General provide an investigative team to travel to Hawaii to further investigate the allegations. This letter states in part:
 

 During the course of [the one officer investigation], more than a half dozen officers came forward with unsolicited complaints and made additional allegations of misconduct. Included in those allegations are issues of misappropriation of government services (obtaining medical care for ineligible relatives) and sexual harassment. Evidenced in those statements are a widespread disaffection among clinic personnel with what is perceived as [Briggs’] insensitivity to race or gender, coarse language and personal conduct, and harsh treatment of senior and junior personnel alike.
 

 Defendant’s Motion, Exh. 5. Also on July 9, 1992, Admiral Earner wrote Briggs and notified him that he was being investigated for “reports of irregularities in procedure and allegations of misconduct,” including “poor judgement, ... a lack of perception and sensitivity to racial and gender issues, and ... serious deficiencies in ... leadership and management styles.” Defendant’s Motion, Exh. 6.
 

 The inspection team was assembled, arrived in Hawaii and began a second investigation into the allegations and complaints against Briggs. The team comprised Capt. R.L. Martin, DC, USN; Capt. T.B. Olson, NC, USN; Cdr. J.K. Henebery, JAGC, USN; HMCM(SW) V.R. Chemak, USN; and YNl(SW) M.D. Smith, USN. Defendant’s Motion, Exh. 7. The inspection team’s report, dated July 17,1992, concluded in part as follows:
 

 After an extensive review of the facts as presented through hours of unsolicited testimony from members of the command, we must reluctantly recommend that Captain Briggs be relieved as Commanding Officer---- Enclosures (1) through (5) detail the incidents which provide the basis for this conclusion. However, our unanimous decision primarily stems from a perception of his leadership, or lack thereof, which is far more serious and damaging to the future of this command. Captain Briggs is totally incapable of seeing the error of his current behaviour, and has no clue of the deteriorating vital signs of his command. Were the expressions of fear, retribution or sexual harassment to be made by only the mediocre performers, convincing argument could be proposed supporting conspiracy against [Briggs]. The fact is, that allegations from the personnel assigned of
 
 *757
 
 unprofessional conduct on the part of Captain Briggs, run the gamut of rank and corps, from Lieutenant to Captain, male or female, whether Physician, Nurse, or Medical Service Corps. Most alarming ... is that even the bright, the gifted, the caring ... the very future of Navy medicine ... all are very intimidated by Captain Briggs. This must not be allowed to continue!!
 

 Defendant’s Motion, Exh. 7; Administrative Record (“AR”), vol. Ill at 143-44 and 156 (list of 30 people interviewed).
 

 The report also detañed the team’s findings concerning allegations (1) of sexual harassment; (2) that Briggs’ daughter received medical care though ineligible; (3) that Briggs would retaliate against persons whom he perceived to be responsible for the Hotline complaints or whom he perceived were cooperating with the investigation; (4) that Briggs was frequently out of his office in the afternoons; (5) that Briggs’ leadership style adversely impacts his command; (6) that Briggs improperly used his influence to have his daughter hired; and (7) of improprieties concerning one “Spectrum Partnership” agreement. Defendant’s Motion, Exh. 7. The report concluded that afiegations (1) through (5) were substantiated whñe afiegations (6) and (7) were not.
 
 Id.
 

 Based on the two investigations and the report, Admiral W.A. Retz requested of the Chief of Naval Personnel that Briggs be detached for cause from command of the Naval Medical Clinic for “loss of confidence in [Briggs’] ability to command.” Defendant’s Motion, Exh. 4. By memorandum dated July 17, 1992, Briggs was notified that he was detached for cause from command, in accordance with Naval Military Personnel Manual (PERSMAN) § 3410105. Defendant’s Motion, Exh. 8.
 

 Briggs was given until August 6, 1992, later extended to August 21,1992, to respond to the notification of his detachment for cause (DFC), which he did by submitting a rebuttal with 80 pages of enclosures.
 

 Admiral Retz’ “SECOND ENDORSEMENT” dated September 14, 1992 contained new “adverse factual matter” and so was provided to Briggs for comment within 5 working days. After another extension, Briggs submitted his “THIRD ENDORSEMENT” on October 5, 1992. AR, vol. II at 251-64 (containing 14 pages of further rebuttal). Admiral Retz’ “FOURTH ENDORSEMENT” dated October 8, 1995 was forwarded to the Chief of Naval Personnel, noting Briggs’ contention in his “THIRD ENDORSEMENT” that the Naval Investigative Service failed to perform a complete investigation into the sender of an anonymous letter. AR, vol. II at 250.
 

 From early December 1992 to late February 1993, Briggs was screened, per his request, for continuation on active duty so that he eventually could qualify for military retirement benefits.
 
 See
 
 Briggs Decl. at ¶¶ 13-14. Screening began December 2,1992 when Lieutenant Ohles noted that Briggs wanted to appear before the Medical Officer Continuation Board, wanted 4 year multi-year special pay, would need an age 60 waiver to continue on active duty, and was not eligible for reserve retirement.
 
 See
 
 AR, vol. I at 43.
 

 On December 16, 1992, the Chief of Naval Personnel approved Briggs’ detachment for cause. AR, vol. II at 248. At some point during the period from December 18 to 21, 1992, Commander Shore, an intermediate level retention sereener, noted “PERS-8 action affirmed SNO [subject named officer] being
 
 relieved for cause
 
 as the commanding officer Naval Medical Clinic, Hawaii in Dec[.] 1992. Due to his seniority and past assignment history, SNO is not ready [sic] distributable within the general medical officer community. Therefore
 
 can not
 
 support age waiver past 60 per SECNAY policy.” AR, vol. I at 43 (emphasis in original).
 

 On February 10, 1993, a Captain Brant noted three reasons not to retain Briggs: (1) his detachment for cause; (2) failure to maintain credentials in family practice for past 12 months; and (3) ineligibility for retirement absent an age waiver. AR, vol. I at 49. The government acknowledges, however, that Briggs’ alleged credentialing deficiency was the result of an error in Bureau of Medicine records. Defendant’s Motion at 22 n. 10.
 

 On February 17, 1993, Briggs met with Deputy Surgeon General of the Navy, Rear Admiral Robert Higgins, to inquire about the
 
 *758
 
 grounds of Ms detachment and the prospects for extending Ms active duty service. Briggs Decl. at ¶ 14. Admiral Higgins informed him that the Navy would not reconsider Ms detachment and that a further decision had been made to release him from active duty, allegedly in part because of the credentialing deficiency.
 
 Id.
 
 at ¶ 15.
 

 On February 2, 1993, the CMef of Naval Personnel demed Briggs’ request for retention on active duty. AR, vol. I at 45. On February 26,1993, Rear Admiral Gallo, Deputy CMef of Naval Personnel, recommended involuntary release from active duty (IRAD) for Briggs to the Secretary of the Navy, stating that “[t]he Navy is currently undergoing demobilization of Reserve officers and is additionally undergoing a long range period of reductions in authorized officer strengths.” AR, vol. I at 48.
 

 From the initial screening until Briggs was recommended for IRAD, at least 18 people subordinate to the Secretary of the Navy screened Briggs’ request for retention and the recommendation of IRAD. AR, vol. I at 43-44, 48-49. No one recommended retention.
 
 Id.
 

 Briggs subsequently appealed his DFC and IRAD to the Board for Correction of Naval Records (“Board”). By letter dated October 18, 1994, the Board upheld Briggs’ DFC and IRAD, finding that (1) Ms DFC was procedurally proper; (2) the evidence submitted “was insufficient to establish the existence of probable material error or injustice;” and (3) the DFC “was more than enough to justify [Ms] release from active duty.” AR, vol. I at 1.
 

 DISCUSSION
 

 I.
 
 JUSTICIABILITY
 

 Defendant argues in Ms motion to dismiss that Briggs’ detachment for cause and involuntaay release from active duty are nonjusticiable, nonreviewable internal military matters committed wholly to the discretion of the Secretary. Briggs does not respond to Defendant’s motion to dismiss.
 

 While certain military decisions are subject to judicial review, ‘“[t]he federal courts do not sit to run the [Navy].’ ”
 
 Cooney v. Dalton,
 
 877 F.Supp. 508, 511 (D.Haw. 1995) (quoting
 
 Denton v. Sec’y of the Air Force,
 
 483 F.2d 21, 24 (9th Cir.1973));
 
 see also Muhammad v. Sec’y of the Army,
 
 770 F.2d 1494, 1495 (9th Cir.1985) (military discharge subject to judicial review);
 
 Schlanger v. United States,
 
 586 F.2d 667, 671 (9th Cir.1978) (same);
 
 Sebra v. Neville,
 
 801 F.2d 1135, 1139 (9-th Cir.1986) (“Federal courts restrict their review of military decision-makmg not because they lack jurisdictional power to hear military disputes, but out of deference to the special function of the military in our constitutional structure and in the system of national defense.”);
 
 Johnson v. Orr,
 
 617 F.Supp. 170, 172 (E.D.Cal.1985) (“ ‘The courts are extremely reluctant to interfere with the military’s exercise of discretion over its internal affairs. This is particularly so when the military makes personnel changes, pursuant to its regulations, through its promotion or discharge processes.’”) (quoting
 
 benShalom v. Sec’y of the Army,
 
 489 F.Supp. 964, 971 (E.D.Wis.1980)),
 
 affd,
 
 787 F.2d 597 (1986).
 

 Defendant contends that while military
 
 discharge
 
 decisions may be reviewable, here, both the decision to detach Briggs from command and the decision to release him from active duty are internal military decisions wMch are unreviewable and nonjusticiable.
 
 See, e.g., Covington v. Anderson,
 
 487 F.2d 660, 665 (9th Cir.1973) (“change in duty assignments [suspension of jet pilot with Oregon Air National Guard from flight status] are subject to the non-reviewability rule”);
 
 Arnheiter v. Chafee,
 
 435 F.2d 691, 692 (9th Cir.1970) (federal court had no jurisdiction over decision to release Navy officer from command of sMp);
 
 Denton v. Sec’y of Air Force,
 
 483 F.2d 21, 24 (9th Cir.1973)
 
 (Amheiter
 
 not applicable to discharge decision because
 
 Amheiter
 
 “related to a matter strictly internal to the Armed Forces — a duty order”).
 

 In
 
 Wallace v. Chappell,
 
 661 F.2d 729 (9th Cir.1981), however, the Ninth Circuit adopted the test set forth in
 
 Mindes v. Seaman,
 
 453 F.2d 197 (5th Cir.1971) for “deciding when military decisions are reviewable.”
 
 Wallace,
 
 661 F.2d at 733 and n. 4
 
 (Covington
 
 and
 
 Amheiter
 
 superseded to extent they
 
 *759
 
 stand for per se rule that military duty assignment decisions are unreviewable). The Court will apply the
 
 Mindes
 
 test to the military decisions here.
 

 The
 
 Mindes
 
 test, as modified by [the Ninth Circuit], declares that an internal military decision is unreviewable unless the plaintiff alleges (1) a violation of the Constitution, a federal statute, or a military regulation; and (b) exhaustion of available intraservice remedies. If the plaintiff meets both prerequisites, the court then weighs four factors to determine whether review should be granted: (1) the nature and strength of the plaintiffs claim; (2) the potential iiyury to the plaintiff if review is denied; (3) the extent to which review would potentially interfere with military functions; and (4) the extent to which military discretion or expertise is involved.
 

 Sebra v. Neville,
 
 801 F.2d 1135, 1141 (9th Cir.1986) (internal citations omitted);
 
 Christoffersen v. Washington State Air Nat’l Guard,
 
 855 F.2d 1437, 1442 (9th Cir.1988).
 

 Here, Briggs satisfies both prerequisites; he alleges violations of the Constitution and military regulations, and his appeal to the Board for Correction of Naval Records has been denied. Upon balancing the
 
 Mindes
 
 factors as to (1) the decision to detach Briggs from command and (2) the decision to release him from active duty, the Court finds that while Briggs’ detachment from command is unreviewable, his release from active duty is not.
 

 A.
 
 Detachment from Command
 

 The Court finds that Briggs’ detachment for cause from command is nonjusticiable. First, as discussed below, Briggs fails to show the Navy violated any regulations in detaching him from command. This factor thus favors Defendant.
 

 Second, while a DFC “has a serious effect on [an] officer’s future naval career”
 
 (see
 
 PERSMAN § 3410105.1.b), it is less serious than a straight discharge. This factor slightly favors Briggs.
 

 Third, review of a detachment from command would potentially greatly interfere with military functions, although the Court recognizes that the command at issue, that of the Naval Medical Center, is not directly related to combat.- This factor favors Defendant.
 

 Finally, the Court finds that deciding who shall command involves military discretion and expertise to a great extent. This factor strongly favors Defendant.
 

 Under the
 
 Mindes
 
 test, the Court finds that Briggs’ detachment from command is nonjusticiable.
 
 Cf. Sebra v. Neville,
 
 801 F.2d 1135, 1142 (9th Cir.1986) (“[M]ilitary[ ] [has] broad discretionary authority with respect to transfers of military personnel. The Constitution confers plenary power over the military upon Congress, which in turn has delegated to the military considerable discretion over the handling of internal processes such as personnel matters____ [M]ilitary transfer decisions go to the core of deployment of troops and overall strategies of preparedness. Courts are properly wary of intruding upon that sphere of military decision-making.”).
 

 B.
 
 Release from Active Duty
 

 The Court finds however that Briggs’ release from active duty is reviewable. First, as discussed below, Briggs’ DFC was procedurally proper, not arbitrary or capricious, and supported by substantial evidence. Accordingly, his allegation that his release from active duty was based improperly on his DFC and on a nonexistent credentialing deficiency is insufficient to show that his release as a whole was arbitrary or capricious or otherwise improper. This factor thus favors Defendant.
 

 Second, the potential injury to Briggs — his release from active duty and the consequent potential denial of military retirement benefits — is great.
 
 See
 
 Plaintiffs Cross-Motion at ¶ 19. This factor favors Briggs.
 

 The third and fourth factors require some discussion. Defendant argues that a decision to release a reserve officer from active duty is subject to no procedural or substantive limitations whatsoever — in effect implying that the Secretary could effect such a release arbitrarily and capriciously without legal consequence.
 

 
 *760
 
 The Court agrees with Defendant that the Secretary has broad discretion to release a reserve officer from active duty.
 
 See
 
 10 U.S.C. § 681(a) (“Except as otherwise provided in this title, the Secretary concerned may at any time release a Reserve under his jurisdiction from active duty.”);
 
 Cinciarelli v. Carter,
 
 662 F.2d 73, 75 (D.C.Cir.1981) (“In the absence of a [Standard Written Agreement to Reserve Officers pursuant to 10 U.S.C. §§ 679-80], a Reservist may be released from active duty at any time, and such a change in status is committed to the sole discretion of the President or the Secretary of the appropriate armed service.”) (citing 10 U.S.C. § 681);
 
 Abruzzo v. United States,
 
 206 Ct.Cl. 731, 513 F.2d 608, 611 (1975) (“It is well settled that it rests within the discretion of the particular armed service whether to place a reserve officer on active duty.”);
 
 Denby v. Berry,
 
 263 U.S. 29, 33-34, 44 S.Ct. 74, 76, 68 L.Ed. 148 (1923) (“Orders releasing individuals from active service and putting them on inactive duty were clearly within the power of the President and of the Secretary of the Navy acting for him in the administration of the act. Nowhere is there found any limitation upon the discretion of the executive in this regard. The orders in such cases were in the nature of military orders by the Commander in Chief in the assignment or withdrawal of available forces to or from duty for the good of the service.”);
 
 but compare Woodward v. United States,
 
 871 F.2d 1068, 1072 (Fed.Cir.1989) (“[E]mployment actions [reserve’s release from active duty] claimed to be based on constitutionally infirm grounds are nevertheless subject to judicial review.”),
 
 cert. denied,
 
 494 U.S. 1003, 110 S.Ct. 1295, 108 L.Ed.2d 473 (1990);
 
 cf. Webster v. Doe,
 
 486 U.S. 592, 601, 108 S.Ct. 2047, 2052-53, 100 L.Ed.2d 632 (1988) (director of CIA’s decision to terminate employee not subject to judicial review under APA because committed to agency’s discretion under meaning of 5 U.S.C. § 701(a)(2) but subject to review for constitutional claims).
 

 However, the Court is not prepared here to find that that discretion is unlimited and absolute.
 
 See, e.g., Woodward,
 
 871 F.2d at 1072 (release from active duty reviewable for constitutional claims). Because a release from active duty is analogous to but arguably less of an “internal” military matter (and more detrimental) than a mere transfer or change of duty assignment (decisions as to which are subject to no per se rule precluding review), the Court finds that under the
 
 Mindes
 
 test, Briggs’ release from active duty here is reviewable.
 
 See Wallace,
 
 661 F.2d at 733 n. 4 (“[TJhere is no per se rule precluding review of duty assignments____”).
 

 II.
 
 STANDARD FOR JUDICIAL REVIEW OF ADMINISTRATIVE ACTION
 

 The parties agree that the Court’s review is governed by the “arbitrary and capricious” standard under the Administrative Procedure Act (“APA”), 5 U.S.C. § 701
 
 et seq.
 
 Under the APA, the scope of judicial review of agency action is narrow:
 

 Assuming that statutory procedures meet constitutional requirements, the court is limited to a determination of whether the agency substantially complied with its statutory and regulatory procedures, whether its factual determinations were supported by substantial evidence, and whether its action was arbitrary, capricious or an abuse of discretion.
 

 Albert v. Chafee,
 
 571 F.2d 1063, 1065 (9th Cir.1977) (quoting
 
 Toohey v. Nitze,
 
 429 F.2d 1332, 1334 (9th Cir.1970)); 5 U.S.C. § 706(2);
 
 see also Citizens to Preserve Overton Park, Inc. v. Volpe,
 
 401 U.S. 402, 414, 416, 91 S.Ct. 814, 822-23, 824, 28 L.Ed.2d 136 (1971) (“The court is not empowered to substitute its judgment for that of the agency.”),
 
 overruled on other grounds, Califano v. Sanders,
 
 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977);
 
 Garrett v. Lehman,
 
 751 F.2d 997, 1006 (9th Cir.1985) (Commanding General did not abuse discretion in ordering plaintiff returned to active duty, allegedly so Military Administrative Discharge Board would have jurisdiction to award an “other than honorable” discharge);
 
 Burns v. Marsh,
 
 820 F.2d 1108, 1110 (9th Cir.1987) (Army Board for Correction of Military Records’ refusal to change military records relating to plaintiffs nonseleetion for promotion to colonel upheld as based on substantial evidence and not arbitrary or capricious).
 

 
 *761
 
 Although the scope of review is narrow, the court must make a “searching and careful” inquiry into the agency’s decision-making process, as reflected in the administrative record, to determine (1) whether the agency’s decision “was based on a consideration of the relevant factors;” (2) whether the agency made a “clear error of judgment;” and (3) whether the agency articulated a “rational connection between the facts found and the choice made.”
 
 Citizens to Preserve Overton Park, Inc. v. Volpe,
 
 401 U.S. 402, 416, 91 S.Ct. 814, 823-24, 28 L.Ed.2d 136 (1971) (“searching and careful” inquiry),
 
 overruled on other grounds, Califano v. Sanders,
 
 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977);
 
 [1]
 

 Sears Sav. Bank v. Fed. Sav. and Loan Ins. Corp.,
 
 775 F.2d 1028, 1029 (9th Cir.1985);
 
 Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.,
 
 419 U.S. 281, 285-86, 95 S.Ct. 438, 441-42, 42 L.Ed.2d 447 (1974);
 
 Motor Vehicle Manufacturers Ass’n of the United States, Inc. v. State Farm Mut. Automobile Ins. Co.,
 
 463 U.S. 29, 43, 103 S.Ct. 2856, 2866-67, 77 L.Ed.2d 443 (1983).
 

 The court “should not supply a reasoned basis for the agency’s action that the agency itself has not given. But a decision of less than ideal clarity will be upheld if the agency’s path may reasonably be discerned.”
 
 Sears Sav. Bank,
 
 775 F.2d at 1029 (citing
 
 SEC v. Chenery Corp.,
 
 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947) and
 
 Bowman Transp.,
 
 419 U.S. at 286, 95 S.Ct. at 442).
 

 “If the administrative record is inadequate to explain the action taken, the preferred practice is to remand to the agency for amplification.”
 
 Sears Sav. Bank,
 
 775 F.2d at 1030 (citing
 
 Public Power Council v. Johnson,
 
 674 F.2d 791, 794 (9th Cir.1982) and
 
 Citizens to Preserve Overton Park,
 
 401 U.S. at 420, 91 S.Ct. at 825-26);
 
 see also Pension Benefit Guaranty Corp. v. LTV Corp.,
 
 496 U.S. 633, 654, 110 S.Ct. 2668, 2680, 110 L.Ed.2d 579 (1990) (remanding is “preferred course”).
 

 III.
 
 THE REGULATIONS
 

 Briggs first contends that he was detached for cause in violation of PERSMAN § 3410105.
 
 See Dellaverson v. Laird,
 
 351 F.Supp. 134, 138-39 (S.D.Cal.1972) (“ Nidation by the military of its own regulations constitutes a violation of an individual’s rights to due process of law.’ ”) (quoting
 
 Antonuk v. United States,
 
 445 F.2d 592, 595 (6th Cir.1971)). Section 3410105 provides in relevant part as follows:
 

 1. Discussion
 

 a. Detachment for Cause (DFC) is the administrative removal of an officer ... from their current duty assignment before their planned rotation date____
 

 b. The need for a DFC arises when an officer’s performance or conduct detracts from accomplishing the command mission, and the officer’s continuance in their billet can only negatively impact the command. DFC is one of the strongest administrative measures used in the ease of officers____ [A] DFC has a serious effect on the officer’s future naval career, particularly with regard to promotion, duty assignment, selection for schools, and special assignment. The initiation of a DFC, therefore, should be undertaken with full appreciation of its gravity.
 

 2. DFC’s generally are not appropriate:
 

 
 *762
 
 b. When there is a reasonable alternative within the command to resolve the situation, whatever the cause. As a matter of policy, the Chief of Naval Personnel considers that shore commands, particularly those in the continental United States, should be capable of dealing with a problem officer without resorting to a request for a DFC. Exceptions to this policy might be the case of an officer whose repeated conduct while assigned to a relatively independent, isolated area has reflected adversely on the Navy----
 

 c. For, or instead of, disciplinary action____
 

 3. Reasons for requesting the DFC: ...
 

 a. Misconduct----
 

 b. Unsatisfactory performance involving one or more significant events resulting from gross negligence or where complete disregard of duty is involved—
 

 c. Unsatisfactory performance of duty over an extended period of time____
 

 d. Loss of confidence in an officer in command. The unique position of trust and responsibility that officers in command possesses [sic]; their role in shaping morale, good order, and discipline within the command; and their influence on mission requirements and command readiness make it imperative that their immediate superiors have full confidence in their judgement and ability to command. An articulated, fact supported loss of such confidence by the immediate superior, as concurred in by a flag officer in the chain of command, is a sufficient basis upon which to detach an officer in command.
 

 4. Procedural or leadership requirements before initiating a DFC request.
 

 a. Reassignment within the command has been considered and is not a reasonable alternative.
 

 b. The deficiency is not reasonably susceptible to correction by counseling, training, guidance, or by authorized command disciplinary measures____
 

 c. All allegations must be adequately supported by appropriate inquiry or documentation____
 

 e. When the DFC request is based on one or more significant events, ensure that the details of the events are adequately documented.
 

 f. When unsatisfactory performance of duty over an extended period of time is involved, make sure the developing situation has been properly documented by the use of fitness reports, command counseling, training, and guidance____
 

 (1) Strong, frank, and meaningful command guidance and counseling must be given and documented in this type of DFC request____
 

 (2) A LOI [letter of instruction], if used, must describe specific weaknesses, recommend suitable and reasonable measures for improvement, clearly establish the desired performance standard, and if appropriate, establish a period of time for correction of the performance deficiency____
 

 (3) The officer must be given a reasonable period of time to improve and achieve a satisfactory and acceptable level of performance____
 

 5. Requirements for request for DFC:
 

 a. State the specific reason or reasons for the request____
 

 c. Provide a detailed statement describing the facts and circumstances which support the reason(s) for the request. For requests based on a significant event, describe the event involved,
 

 d. If the request is made by reason of unsatisfactory performance of duty over an extended period of time, indicate what corrective actions were taken to improve or correct the officer’s performance and the results of those actions. In such cases, early counseling and other leadership efforts are important elements in the disposition of the DFC request____
 

 g. Indicate in the request or in an endorsement to the request, that a copy of the request is being referred to the offi
 
 *763
 
 eer for a written statement concerning the DFC request and that the officer is being given a specific amount of time (normally 10 working days) within which to respond to the request____
 

 7. Additional requirements governing the DFC of an officer in command,
 

 a. A request for the DFC of an officer in command generally evolves from the same type circumstances delineated above. An evaluation by a superior in the chain of command of failure on the part of an officer in command to exercise sound judgment in one or more areas and loss of confidence will constitute a sufficient basis to request the DFC of that officer____
 

 IV.
 
 APPLICATION
 

 Here, Briggs was detached for cause pursuant to subsection 3.d. of PERSMAN § 3410105 — loss of confidence in an officer in command.
 
 See
 
 Defendant’s Motion, Exh. 4 (“I request that Captain Jackie R. Briggs, MC, USNR, be detached for cause from command by reason of my loss of confidence in his ability to command the Naval Medical Clinic, Pearl Harbor.”).
 

 Briggs contends his DFC violated § 3410105 because (1) a DFC is not appropriate “[flor, or instead of, disciplinary action” (2.c.); (2) a DFC is not appropriate “[w]hen there is a reasonable alternative within the command to resolve the situation, whatever the cause” (2.b.); and (3) before a DFC may occur, the officer first must be given “[s]trong, frank, and meaningful command guidance and counseling” (4.f.(l)) and a reasonable period of time to improve and achieve a “satisfactory and acceptable level of performance” (4.f.(3)).
 
 See
 
 Plaintiffs Motion at 3-4.
 

 Briggs’ contentions are without merit. First, Briggs was detached from command because his superior officer had lost confidence in his ability to command — based,
 
 inter alia,
 
 on the two investigations having substantiated various instances of misconduct on the part of Briggs and on the inspection team’s observation that he had “no clue of the deteriorating vital signs of his command.” Defendant’s Motion, Exh. 7; AR, vol. Ill at 144. There is no evidence that Briggs’ DFC was in lieu of discipline.
 

 Second, given the loss of confidence in Briggs’ ability to command based on the findings of the two investigations, there clearly and logically was no reasonable alternative “within the command” to detaching him from that command.
 
 See
 
 Defendant’s Motion, Exh. 4; AR, vol. II at 275 (“Given my [Admiral Retz] duties as the Responsible Line Commander, and my concern for the morale of the men and women at the clinic and its impact upon the quality of medical services available, I determined that Captain Briggs should not remain in command.”);
 
 see also
 
 PERSMAN § 3410105.3.d (“An articulated, fact supported loss of such confidence by the immediate superior, as concurred in by a flag officer in the chain of command, is a sufficient basis upon which to detach an officer in command.”); PERSMAN § 3410105.7.f (“Nothing in the foregoing [DFC regulations] derogates the inherent authority to a superior in command to reheve an officer in command of a subordinate unit to assure accomplishment of the assigned mission. In such ease the summary relief should be followed by a request for the DFC initiated by superior in command under this article”.).
 

 Finally, the requirement cited by Briggs that he be given counseling and a chance to improve before a DFC is applicable only to a DFC for unsatisfactory performance of duty over an extended period of time pursuant to subsection 3.e and is not applicable to a DFC for loss of confidence in an officer in command pursuant to subsection 3.d. Accordingly, Briggs fails to show that his DFC violated applicable regulations or due process.
 

 Y.
 
 OTHER CONTENTIONS
 

 Briggs also contends that his DFC violated due process because he was not afforded a hearing and allowed to confront his accusers, but he cites no authority — in the APA, the Navy’s regulations or elsewhere— suggesting that he is so entitled.
 
 See Burns v. Marsh,
 
 820 F.2d 1108, 1110 (9th Cir.1987) (“In considering whether to correct a mili
 
 *764
 
 tary record, the [Board] is not required to hold hearings to satisfy due process. Such hearings are discretionary.”) (citations omitted);
 
 see also Antonuk v. United States,
 
 445 F.2d 592, 594 (6th Cir.1971) (“[W]e decline to extend the requirement of a full formal hearing to the administrative activation of an Army reservist.”);
 
 Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,
 
 435 U.S. 519, 524, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978) (“Agencies are free to grant additional procedural rights in the exercise of their discretion, but reviewing courts are generally not free to impose them if the agencies have not chosen to grant them.”);
 
 Pension Benefit Guaranty Corp. v. LTV Corp.,
 
 496 U.S. 633, 654, 110 S.Ct. 2668, 2680, 110 L.Ed.2d 579 (1990)
 
 (“Vermont Yankee
 
 stands for the general proposition that courts are not free to impose upon agencies specific procedural requirements that have no basis in the APA.”).
 

 Briggs fails to show that the Navy’s failure to afford him a discretionary hearing was arbitrary or capricious.
 
 See Burns v. Marsh,
 
 820 F.2d 1108, 1110 (9th Cir.1987) (allegations that military records contained material errors which resulted in probable injustice “insufficient to show arbitrary or capricious action by the [Board] in denying a [discretionary] hearing”).
 

 Finally, Briggs contends that his involuntary release from active duty, allegedly based in part on the erroneous credentialing deficiency, was improper, citing no authority. Defendant responds that (1) the Secretary of the Navy’s authority to release a reserve officer from active duty is not subject to any procedural or substantive limitations; and (2) the decision otherwise was not arbitrary or capricious because in light of Briggs’ DFC, the age waiver issue, and difficulties with his distributability within the general medical officer community, the credentialing issue was at most a minor consideration in the decision to release Briggs and harmless error.
 

 Defendant’s first contention has been discussed above. Briggs’ IRAD is reviewable. Upon review, the Court nevertheless finds that even assuming his erroneous credentialing deficiency was considered by some of his reviewers, Briggs fails to show — in light of his DFC, other legitimate difficulties with retaining him on active duty, and government cutbacks resulting in increased competition for fewer slots — that his IRAD was arbitrary or capricious or otherwise improper. At most, consideration of the credentialing deficiency was harmless error.
 
 See
 
 5 U.S.C. § 706 (in reviewing administrative record under APA, “due account shall be taken of the rule of prejudicial error”);
 
 see, e.g., Abruzzo v. United States,
 
 206 Ct.Cl. 731, 513 F.2d 608, 611 (1975) (“[E]ven had the transfer request [for transfer from Marine Corps to Air Force] been properly processed, it would have been disapproved by the Air Force. Hence, the failure properly to process the request, while inexcusable, must be viewed as harmless error.”).
 

 Accordingly, in light of the foregoing discussion, the Court finds that the Board’s denial of Briggs’ appeal of his DFC and IRAD was not arbitrary or capricious or an abuse of discretion and that its decision was supported by substantial evidence.
 

 CONCLUSION
 

 For the foregoing reasons, the Court GRANTS Defendant’s motion to dismiss as to Plaintiffs detachment for cause and DENIES Defendant’s motion to dismiss as to Plaintiffs release from active duty. The Court further GRANTS Defendant’s motion for summary judgment, in its entirety and alternatively, as to (1) Plaintiffs detachment for cause; (2) Plaintiffs release from active duty; and (3) the Board for Correction of Naval Records’ denial of Plaintiffs appeal. The Court finally DENIES Plaintiffs cross-motion for summary judgment. Judgment shall be entered in favor of Defendant.
 

 IT IS SO ORDERED.
 

 [1]
 

 .
 
 But see 2
 
 Kenneth C. Davis and Richard J. Pierce, Jr.,
 
 Administrative Law Treatise
 
 § 11.4 at 201 (3d ed. 1994) ("There are three reasons to believe, however, that the
 
 Overton Park
 
 opinion overstated the requirements of the arbitrary and capricious test when it referred to a 'searching and careful’ inquiry into the facts that support an agency's decision. First, the
 
 Overton Park
 
 opinion also referred to the arbitrary and capricious test as requiring reversal when an agency has made a 'clear error of judgment.' That sounds like a paraphrase of the ‘clearly erroneous' test— a test that is
 
 more
 
 demanding than the substantial evidence test. Second, the Court clarified and cut back on other aspects of
 
 Overton Park
 
 in
 
 [Pension Benefit Guaranty Corp. v. LTV Corp.,
 
 496 U.S. 633, 654-55, 110 S.Ct. 2668, 2680-81, 110 L.Ed.2d 579 (1990) ].
 
 Overton Park
 
 was a hastily drafted opinion that includes considerable misleading and excessive dicta. The Court is likely to continue to qualify its many overstatements. Third, the Court has said many times that the arbitrary and capricious test is
 
 less
 
 demanding than the substantial evidence test. It cannot be both more and less demanding.”) (citations omitted).